Jones, J.
We hold that today the manufacturer of a defective product may be held liable to an innocent bystander, without proof of negligence, for damages sustained in consequence of the defect.
On August 2, 1967, a clear, dry day, Christino Paglia was driving his Chrysler automobile southerly on Route 144 just south of Albany, when suddenly the vehicle crossed the solid double line into the northbound lane of traffic and collided head on with an automobile owned by Marcia Codling and being driven by her husband, Frank, in the opposite or northerly direction.
Paglia had purchased his 1967 Chrysler Newport Custom sedan about four months before the accident and had driven it just over 4,000 miles. At no time prior to the accident had he experienced any difficulty with its steering mechanism. At the time of the accident he was traveling at a speed of 45 to 50 miles per hour, when suddenly and unexplainably his vehicle started to drift over the double solid line into the northbound lane. There was evidence that Paglia neither blew his horn nor applied his brakes, although short skid marks were observed. The Codling vehicle, on the other hand, had slowed down and nearly stopped just before the collision.
In Action No. 1 Marcia Codling, owner and passenger, and Frank Codling, her husband and driver of the Codling vehicle, sued Paglia in negligence'and Chrysler in negligence and breach of warranty, seeking recovery for personal injuries and medical expenses and loss of services; Paglia cross-claimed against Chrysler to recover over any judgment returned against him in favor of the Codlings. After the jury was drawn the Codlings settled their claims against Paglia on his payment of $50,000 to *336 each of them, and Paglia’s cross claim against Chrysler was severed and reserved for adjudication by the court after trial.
In Action No. 2 Paglia sued Chrysler in negligence and warranty for his own personal injuries and for property damage to his automobile.
The two cases proceeded to trial together. Over objections of Chrysler the trial court submitted two specific written questions to the jury, the first related to the negligence theory, and the second concerning the breach of warranty count :
“ Did the defendant Chrysler Corporation negligently manufacture and assemble the Paglia automobile with a defective power assist steering system? ”
“ Did the defendant Chrysler Corporation breach its implied warranty of merchantability and fitness of the Paglia automobile ? ’ ’
The court further charged the jury: “If the product is in fact defective * * * the manufacturer is liable to any person properly using the product and to persons not using the defective product who are innocent bystanders, for injury resulting from its defective and unfit condition.” Chrysler also took exception to a charge that in Action No. 2 contributory negligence was not a defense to Paglia’s action for personal injuries and property damage against Chrysler for breach of warranty.
By a vote of 10 to 2, the jury answered the first specific question submitted in the negative (i.e., made a finding of no negligence on the part of Chrysler) and the second question in the affirmative (i.e., made a finding of breach of warranty by Chrysler). In Action No. 1. the jury returned verdicts in favor of Frank Codling against Chrysler in the amount of $150,000, which after deduction of the $50,000 paid by Paglia resulted in a net verdict of $100,000; and in favor of Marcia Codling against Chrysler, in the amount of $200,000, which after deduction of the corresponding $50,000 paid by Paglia resulted in a net verdict of $150,000. Both verdicts were, of course, based on breach of warranty and not negligence. Following the trial, in Action No. 1 Paglia was granted summary judgment against Chrysler on his cross claim to recoup the $100,000 he had paid the Codlings.
In Action No. 2 the jury returned a verdict for Paglia, as plaintiff, in the amount of $15,000 to which was added, pursuant to stipulation, $2,760 for property damage suffered by him. Recov *337 ery here, too, was on the theory of breach of warranty. Again, we note that the jury found no negligence on Chrysler’s part.
On cross appeals, the Appellate Division, Third Department, in Action No. 1, affirmed the jury verdicts in favor of the Cod-lings against Chrysler, but reversed the judgment for Paglia on his cross claim against Chrysler and dismissed that cross claim. In Action No. 2 the Appellate Division affirmed the jury verdict against Chrysler in favor of Paglia for his own injuries and property damage.
In Action No. 1 Paglia has appealed as of right to our court from the Appellate Division’s reversal of his judgment over against Chrysler and the dismissal of his cross claim. Chrysler appeals by permission in both Actions No. 1 and No. 2.
In our view there was ample evidence in the record to support the factual determinations made by the jury—that Chrysler breached its implied warranty of merchantability and fitness, and that such breach was a proximate cause of the accident.
The uncontradicted proof was that Paglia’s automobile “ went to the left ” and that he “ tried to steer to the right ” but that “ she locked on me or something. ” “ I couldn’t steer right. It went to the left and I tried to steer to the right and she wouldn’t budge, she wouldn’t give.” Counsel for Chrysler lay great stress on the alleged failure of proof of any specific defect in the power steering system and the inadequacy of plaintiffs’ tests to prove the defect. Claim is also made that even if a defect at the time of the accident be assumed, there was no proof that the defect existed at the time the automobile left the Chrysler plant. These issues were fairly put to the jury by the trial court on the instructions (to which no exceptions were taken):
“While the burden is upon the plaintiff to prove that the product was defective and that the defect existed while the product was in the manufacturer’s possession, plaintiff is not required to prove the specific defect, especially where the product is complicated in nature. Proof of necessary facts may be circumstantial. Though the happening of the accident is not proof of a defective condition, a defect may be inferred from proof that the product did not perform as intended by the manufacturer. ’ ’ “* * * that for the defendant Chrysler Corporation to be held liable, the defect need not be apparent at the time the prod *338 uct left the factory, but may be merely a latent defect or hidden defect which later arises and causes damage.”
We are bound under the circumstances to respect the findings of fact made by the jury, there being evidence in the record for their support. With the jury’s conclusion that the steering mechanism of the automobile was not fit for the purpose for which it was intended and that Chrysler, therefore, breached its implied warranty, we reach the question whether Chrysler’s liability for such breach extends to the Codlings, nonuser innocent bystanders with respect to the vehicle.
We start with a thumbnail historical catalogue of products liability cases in our court. For many years the law was clear that “ [t]here can be no warranty where there is no .privity of contract.” (Turner v. Edison Stor. Battery Co., 248 N. Y. 73, 74). The crumbling of the citadel began with Greenberg v. Lorenz (9 N Y 2d 195) in-which recovery was allowed an infant plaintiff for injuries caused by pieces of sharp metal found in a can of salmon, notwithstanding that the canned food had been purchased by her father. Next came Randy Knitwear v. American Cyanamid Co. (11 N Y 2d 5) in which the manufacturer of a chemical used for treating fabrics to prevent shrinkage was held liable to a remote purchaser. Then in Goldberg v. Kollsman Instrument Corp. (12 N Y 2d 432) an airplane manufacturer, though not the manufacturer of the defective component part, was cast in liability for wrongful death of a passenger. And in Guarino v. Mine Safety Appliance Co. (25 N Y 2d 460) the manufacturer of a defective oxygen-type protective mask was held liable for injuries sustained by persons who attempted to rescue users of the mask, under the doctrine of 11 danger invites rescue ”.
As we are aware, the erosion of the citadel of privity has been proceeding apace and even more rapidly in other jurisdictions, all with the enthusiastic support of text writers and the authors of law review articles as evidenced by an extensive literature. Once one exception has been made, others have followed as appealing fact situations presented instances in which, in language of result, liability has been imposed to avoid injustice and for the protection of the public. Fact situations where recovery was allowed have shifted from those in which the touchstone was said to be the character of the product *339 manufactured (e.g., dangerous instrumentalities, or household products) to those in which the result turned on the classification of the injured person (e.g., member of the family, employee, user, rescuer).
The dynamic growth of the law in this area has been a testimonial to the adaptability of1 our judicial system and its resilient capacity to respond to new developments, both of economics and of manufacturing and marketing techniques. A developing and more analytical sense of justice, as regards both the economics and the operational aspects of production and distribution has imposed a heavier and heavier burden of responsibility on the manufacturer. It is significant that the Appellate Divisions in three of our four Judicial Departments, the First, Third and Fourth, have now found sufficient encouragement in the decisions and opinions of our court, and elsewhere, to extend the liability of the manufacturer of a defective product to a nonuser bystander. (Singer v. Walker, 39 A D 2d 90; Codling v. Paglia, 38 A D 2d 154; and Ciampichini v. Ring Bros., 40 A D 2d 289.)
We think that the time has now come when our court, instead of rationalizing broken field running, should lay down a broad principle, eschewing the temptation to devise more proliferating exceptions. (Cf. B. R. DeWitt, Inc. v. Hall, 19 N Y 2d 141, with reference to the doctrine of mutuality of estoppel as an absolute test for res judicata.)
Much of what we have written in extending the liability of the manufacturer to the noncontracting user is equally applicable to the bystander. “ The policy of protecting the public from injury, physical or pecuniary, resulting from misrepresentations outweighs allegiance to old and out-moded technical rules of law which, if observed, might be productive of great injustice. The manufacturer # # * unquestionably intends and expects that the product will be purchased and used in reliance upon his express assurance of its quality and, in fact, it is so purchased and used. Having invited and solicited the use, the manufacturer should not be permitted to avoid responsibility, when the expected use leads to injury and loss, by claiming that he made no contract directly with the user.” (Randy Knitwear v. American Cyanamid Co., 11 N Y 2d 5, 13, supra.)
*340 The Appellate Divisions, confronting this issue and concluding that protection should now be extended to the innocent bystander, have spoken firmly. “[T]he ultimate purpose in widening the scope of the warranty is to cast the burden on the manufacturer who put his product in the marketplace.” (Singer v. Walker, 39 A D 2d 90, 97, supra.) “ [T]here would appear to be no logic or reason in denying a right to relief to persons injured by a defective dangerous instrumentality solely on the ground that they were not themselves a user of the instrument. * * * Manufacturers of articles which may be a source of danger to several people if not properly manufactured should not be immune from liability for breach of implied warranty, a tortious wrong, to persons injured by a defectively manufactured article, where the manufacturer could reasonably contemplate injury to such persons by reason of the defect.” (Codling v. Paglia, 38 A D 2d 154, 158, supra.) “ To restrict recovery to those who are users is unrealistic in view of the fact that bystanders have less opportunity to detect any defect than either purchasers or users. Our decision is one of policy but is mandated by both justice and common sense.” (Ciampichini v. Ring Bros., 40 A D 2d 289, 293, supra.)
Today as never before the product in the hands of the consumer is often a most sophisticated and even mysterious article. Not only does it usually emerge as a sealed unit with an alluring exterior rather than as a visible assembly of component parts, but its functional validity and usefulness often depend on the application of electronic, chemical or hydraulic principles far beyond the ken of the average consumer. Advances in the technologies of materials, of processes, of operational means have put it almost entirely out of the reach of the consumer to comprehend why or how the article operates, and thus ev^n farther out of his reach to detect when there may be a defect or a danger present in its design or manufacture. In today’s world, it is often only the manufacturer who can fairly be said to know and to understand when an article is suitably designed and safely made for its intended purpose. Once floated on the market, many articles in a very real practical sense defy detection of defect, except possibly in the hands of an expert after laborious and perhaps even destructive disassembly. By way of direct illustration, how many automobile purchasers or *341 users have any idea how a power steering mechanism operates or is intended to operate, with its “circulating worm and piston assembly and its cross shaft splined to the Pitman arm”? Further, as has been noted, in all this the bystander, the nonuser, is even worse off than the user — to the point of total exclusion from any opportunity either to choose manufacturers or retailers or to detect defects. We are accordingly persuaded that from the standpoint of justice as regards the operating aspect of today’s products, responsibility should be laid on the manufacturer, subject to the limitations we set forth.
Consideration of the economics of production and distribution point in the same direction. We take as a highly desirable objective the widest feasible availability of useful, nondefective products. We know that in many, if not most instances, today this calls for mass production, mass advertising, mass distribution. It is this mass system which makes possible the development and availability of the benefits which may flow from new inventions and new discoveries. Justice and equity would dictate the apportionment across the system of all related costs — or production, of distribution, of potsdistribution liability. Obviously, if manufacturers are to be held for financial losses of nonusers, the economic burden will ultimately be passed on in part, if not in whole, to the purchasing users. But considerations of competitive disadvantage will delay or dilute automatic transferral of such added costs. Whatever the total cost, it will then be borne by those in the system, the producer, the distributor and the consumer. Pressures will converge on the manufacturer, however, who alone has the practical opportunity, as well as a considerable incentive, to turn out useful, attractive, but safe products. To impose this economic burden on the manufacturer should encourage safety in design and production; and the diffusion of this cost in the purchase price of individual units should be acceptable to the user if thereby he is given added assurance of his own protection.
Finally, we invite attention to the number of other States which have preceded us in imposing strict products liability in favor of nonusers.
(Arizona — Caruth v. Mariani, 11 Ariz. App. 188
[Occupants of second car allowed recovery against manufacturer of first car in collision due to defective brakes.]
*342 California — Elmore v. American Motors Corp., 70 Cal. 2d 578
[Driver and passengers in second car allowed recovery against manufacturer of first car with defective drive shaft.]
Connecticut—Mitchell v. Miller, 26 Conn. Sup. 142
[Recovery allowed estate of golfer killed by runaway car against manufacturer where runaway was caused by faulty transmission system.]
Florida — Toombs v. Fort Pierce Gas Co., 208 So. 2d 615
[Neighbor allowed recovery against manufacturer of propane gas storage tank which exploded.]
Michigan—Piercefield v. Remington Arms Co., 375 Mich. 85
[Bystander allowed recovery against manufacturer of defective shell causing explosion of shotgun barrel.]
Mississippi—Ford Motor Co. v. Cockrell, 211 So. 2d 833
[Bystander allowed recovery against manufacturer of runaway truck started by short circuit.]
New Jersey—Lamendola v. Mizell, 115 N. J. Super. 514
[Occupants of second car allowed recovery against manufacturer of first car out of control due to defective accelerator.]
Pennsylvania — Webb v. Zern, 422 Pa. 424
[Bystander allowed recovery against manufacturer of defective beer keg which exploded.]
See Ann., Strict Tort Liability—Recovery, 33 ALR 3d 415. Restatement, 2d, Torts [Tent. Draft No. 10, April 20, 1964], § 402A.)
We accordingly hold that, under a doctrine of strict products liability, the manufacturer of a defective product is liable to any person injured or damaged if the defect was a substantial factor in bringing about his injury or damages; provided: (1) that at the time of the occurrence the product is being used (whether by the person injured or damaged or by a third person) for the purpose and in the manner normally intended, (2) that if the person injured or damaged is himself the user of the product he would not by the exercise of reasonable care have both discovered the defect and perceived its danger, and (3) that by the exercise of reasonable care the person injured or damaged would not otherwise have averted his injury or damages.
In the present case, we conclude that the jury properly found that Chrysler had produced an automobile with a defective steer *343 ing mechanism; that that defect was a substantial factor in bringing about the accident and thus the injuries to the Codlings; that at the time of the accident Paglia was using the automobile for the purpose and in the manner normally intended; that by the exercise of reasonable care, Paglia would neither have discovered the defective steering mechanism nor perceived its danger; and that, as to the Codlings, the exercise of reasonable care on their part would otherwise not have averted the accident.
Thus, we affirm the judgments in favor of the Codlings against Chrysler.
As to Paglia’s claims against Chrysler, one for his own injuries and property damages and the other for possible recoupment of the payments he made to the Codlings, two aspects call for further consideration and disposition.
The judgment in favor of Paglia against Chrysler in Action No. 2 for his personal injuries and property damage must be reversed, and the action remanded for a new trial. Paglia’s claims were submitted to the jury on theories both of negligence and breach of warranty. The jury found no negligence but returned a verdict in Paglia’s favor for breach of warranty. As to this latter theory, however, the trial court charged that contributory negligence was not a defense, to which charge counsel for Chrysler took exception.
As indicated, contributory fault of the plaintiff is a defense to an action for strict products liability, and the charge that it was not, even when taken in combination with the other, more specific charges given here, constituted reversible error. (See Eisenbach v. Gimbel Bros., 281 N. Y. 474; Maiorino v. Weco Prods. Co., 45 N. J. 570; 47 N. Y. Jur., Products Liability, § 72, p. 208; cf. Fredendall v. Abraham & Strauss, Inc., 279 N. Y. 146; and Razey v. Colt Co., 106 App. Div. 103.)
The contributory fault of a plaintiff could be found in use of the product for other than its normally intended purpose or other than in the manner normally intended. This jury was properly charged on this aspect of the case, and its finding in favor of Paglia as plaintiff cannot be disturbed. Or, contributory fault could be found in the failure to exercise such reasonable care as would have disclosed the defect and the danger attributable thereto. Here again there is no basis for a finding of error in the record in this case. There remains, however, the question whether *344 Paglia independently exercised that degree of care for his own safety that a reasonably prudent person would have exercised under the same circumstances, quite apart from the defective steering mechanism. Thus, in this case, the issue whether Paglia as plaintiff had exercised reasonable care in the operation of his automobile, quite separate and distinct from the defective steering mechanism, and if he did not whether such lack of care was a substantial factor in producing his damages, was never submitted to the jury. Our examination of this record discloses that it cannot fairly be said to be entirely barren of evidence which might have supported a jury verdict against Paglia on this combined issue. Accordingly there must be a new trial in Action No. 2.
In the second aspect, we note that after the trial in these cases and the appeal to the Appellate Division, our court decided Dole v. Dow Chem. Co. (30 N Y 2d 143) on March 22, 1972. In Kelly v. Long Is. Light. Co. (31 N Y 2d 25) and Frey v. Bethlehem Steel Corp. (30 N Y 2d 764), we held that the principles articulated in Dole apply to pending cases. It might appear that such principles would here call for an apportionment of responsibility in Action No. 1 as between Chrysler and Paglia of their combined liability to the Codlings. We do not, however, now apply these principles to the Paglia settlement. The liability of Chrysler to Codlings was established by jury verdict; the payment by Paglia, however, was by way of voluntary settlement. The participation of1 the parties in this settlement was completed prior to our decision in Dole. In our view it would be inappropriate on these facts to undo what has been done and, on the basis of present law, to nullify actions taken by the parties in reliance on the law as it then stood. We accordingly affirm the determination of the Appellate Division dismissing Paglia’s cross claim against Chrysler in Action No. 1.
Nor do we now apply the principles articulated in Dole in Action No. 2 for an apportionment of responsibility between Paglia as plaintiff and Chrysler as defendant. We recognize that the doctrine of contributory negligence has been the target of mounting adverse criticism. Indeed we have been critical. (Rossman v. La Grega, 28 N Y 2d 300, 307-308; Wartels v. County Asphalt, 29 N Y 2d 372, 378.) With full awareness that the doe *345 trine was of judicial rather than legislative origin, we are nonetheless not prepared at this time to substitute some formula of comparative negligence. In our opinion this is a topic now more appropriate for legislative address.*
The orders of the Appellate Division in Action No. 1 affirming the Codling judgments against Chrysler and reversing the judgment of Paglia on his cross claim against Chrysler and dismissing the cross claim are affirmed. The order of the Appellate Division in Action No. 2 affirming Paglia’s judgment against Chrysler is reversed and the action remanded for a new trial.

 See, for instance, Eleventh Annual Report of N. Y. Judicial Conference to Legislature on Civil Practice Law and Rules, Article C, subd. (6), McKinney’s Session Law News, No. 1 (March 10,1973), p. A-12.