**Francis J. LANGFORD, Individually and as natural guardian of Frank P. Langford, an infant, Plaintiff,**

v.

**CHRYSLER MOTORS CORP. and Woodbridge Dodge, Inc., Defendants.**

No. 72–C–1284.

United States District Court,
E. D. New York.

April 18, 1974.

---

Marshall G. Kaplan, Brooklyn, N. Y., for plaintiff.

Markhoff, Gottlieb, Lazarus, D'Auria & Maldonado, P. C. by Julian H. Gottlieb, New York City, for defendant Woodbridge Dodge.

Emile Z. Berman and A. Harold Frost by Marvin V. Ausubel, New York City, for defendant Chrysler Motors Corp.

*Memorandum of Decision*

COSTANTINO, District Judge.

Plaintiff, Francis J. Langford, on behalf of himself and his infant son Frank, seeks to recover damages resulting from defendants' breach of express and implied warranties emanating from the sale of a Dodge Dart automobile. Chrysler Motors Corporation [hereinafter referred to as Chrysler] manufactured, designed and engineered the automobile, and Woodbridge Dodge, Inc. [hereinafter referred to as Woodbridge] sold the vehicle to plaintiff. Chrysler cross-claimed against Woodbridge seeking either indemnification or contribution, and also counter-claimed against plaintiff, alleging that the accident was brought about by his improper use of the automobile. Finally, Woodbridge cross-claimed against Chrysler for indemnification.

The court has jurisdiction pursuant to 28 U.S.C. § 1332 (1971).

All parties waived a jury trial, and the case was tried by the court on September 10, 1973. Decision was reserved. The testimony adduced at trial can be summarized as follows. On July 9, 1971, plaintiff purchased a new Dodge Dart from Woodbridge. Prior to the sale Woodbridge performed all necessary dealer preparations. From July 9, 1971 to December 2, 1971 the car was driven some 4,400 miles without any difficulties. The car was then brought to Woodbridge for servicing, which included a standard inspection of the car's steering system.

On the evening of December 3, 1971 plaintiff drove his son to a scout meeting. On the return trip home plaintiff drove on the Staten Island Expressway, exited at Victory Boulevard and proceeded along a straight stretch of roadway. There was very little traffic, no precipitation and the roadway was well lighted. The plaintiff recalled that he heard a loud noise, that his car suddenly began to veer to the right, that he immediately applied the brakes and turned the steering wheel to the left, but that the car did not respond and continued untowardly to the side of the road. Plaintiff's vehicle hit a parked automobile and caromed into a retaining wall some fifteen feet away. Although the car was equipped with seatbelts they were not fastened.

The collision's impact hurtled plaintiff's son into the dashboard of the car. He sustained serious facial injuries and was hospitalized for two weeks. He received a laceration of the lower lip requiring six stitches and leaving a small permanent scar; the right side of his face was swollen for six months and a lower tooth was chipped. In addition, there was extensive property damage. The front right side of plaintiff's car,

including the front right wheel and tie rod assembly, was smashed. The left side of the parked car was pushed in and a portion of the retaining wall was knocked down.

Plaintiff's expert witness, Dr. Vasilis Morfopoulos of the American Standard Testing Bureau, testified that by means of visual and miscroscopic examination of the tie rod assembly he found three separate and independent events—a seizure of a ball joint located in the tie rod assembly, a pry-out of that ball joint's stud and bearing from its socket and a bending of the socket's stem. He further testified that while the bent stem and pry-out were the immediate result of the collision, the ball joint's seizure was caused by a pre-existing tightness which was manifested by abrasions on the bearing and galling damage and smeared metal on the inside of the socket. It was his opinion that pre-existing imperfections caused the ball joint stud to become fixed in "a peculiar angularity, directed outwards toward the right wheel" and that this was the primary cause of the impaired steering ability of the car.

Defendant Chrysler's expert witnesses testified that they found no evidence of a defective ball joint or of a seizure. They testified that all the damage sustained by the tie rod assembly was the result of the collision. Furthermore, they testified that if a seizure had occurred as testified to by Dr. Morfopoulos and that if plaintiff had turned the steering wheel to the left as he claimed the car would not and could not have pursued the course described by plaintiff.

■ Under New York law where an article is of such a character that when used for the purpose for which it is made it is likely to be a source of danger to several or many people if not properly designed and fashioned, the manufacturer as well as the vendor is liable, for breach of law-implied warranties, to the persons whose use is contemplated.

Goldberg v. Kollsman Instrument Corp., 12 N.Y.2d 432, 436–437, 240 N.Y.S.2d 592, 594–595, 191 N.E.2d 81, 83 (1963); *see* Codling v. Paglia, 32 N.Y.2d 330, 342, 345 N.Y.S.2d 461, 469, 298 N.E.2d 622, 628 (1973); MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 (1919). Liability exists where the defective product was a substantial factor in bringing about the injury or damages and where (1) at the time of the occurrence the product was being used for the purpose and in the manner normally intended, (2) if the person injured or damaged was himself the user of the product he would not by the exercise of reasonable care have discovered the defect or perceived its danger, and (3) that by the exercise of reasonable care the person injured or damaged would not otherwise have averted his injuries or damages. Codling v. Paglia, *supra,* 32 N.Y.2d at 342, 345 N.Y.S.2d at 469–470, 298 N.E.2d at 628–629. Absent contributory fault strict liability is imposed upon the manufacturer for the proximate damages of the defect irrespective of whether it was negligent or was in privity with the injured party. Codling v. Paglia, *supra; see* Case Comment, Codling v. Paglia—New York Stands By The Innocent Bystander, 40 Brooklyn L.Rev. 390 (1973). Similarly the vendor of defective goods will be held liable for breaching an implied warranty of merchantability, even though he may not have been negligent and could not have discovered the defect. N.Y.U.C.C. § 2–314 (McKinney's Consol.Laws, c. 38, 1964); Goldberg v. Kollsman, *supra.* Moreover the vendor's liability will extend to injuries sustained by a member of the purchaser's household who reasonably could be expected to use or be affected by the defective product. N.Y. U.C.C. § 2–318 (McKinney 1964); Goldberg v. Kollsman, *supra; see* Bolm v. Triumph Corp., 33 N.Y.2d 151, 350 N.Y. S.2d 644, 305 N.E.2d 769 (1973).

■ In the case *sub judice* the court finds that Chrysler manufactured the automobile in question with a defective tie rod assembly, which therefore was not fit for the purpose that it was made. Upon visual examination of the tie rod, one can see abrasions on the bearing and

galling damage and smeared metal on the inside of the socket. This clearly supports the testimony of Dr. Morfopoulos, plaintiff's expert witness, that the ball joint had a pre-existing defect. In view of Chrysler's failure to refute or even explain the visible defects, the court concludes that a seizure of the ball joint impaired the steering of the automobile, and that it was a substantial factor in causing the accident. Indeed, Chrysler's own expert witness testified that blue galling marks on the inside of the ball joint would be an indication of pre-impact seizure.

■ The ball joint, manufactured and designed by Chrysler was not susceptible to interference by the dealer or the purchaser of the automobile. As a matter of fact there is no evidence that anyone tampered with the ball joint assembly. Since the car was relatively new, having been driven only some 4,400 miles, and in light of the latent character of the defect, the reasonable inference to be drawn is that the defect existed at the time of manufacture and at the time of sale. Unless contributory fault could be shown both Chrysler and Woodbridge would be liable for the damages and injuries sustained by the plaintiff.

■ Defendants argue that plaintiff's negligent operation of the automobile caused the accident. There was testimony that the plaintiff failed to apply his brakes on time. However, the evidence fails to sustain defendants' position. The uncontroverted testimony of Dr. Morfopoulos was that at the speed the car was travelling plaintiff could not have had time to apply his brakes. It is evident then, that the plaintiff could not have averted the accident.

■■ Next it is argued that plaintiff was negligent by not fastening the car's seat belts. The New York courts have consistently held that the failure to wear seat belts does not constitute contributory negligence. Spier v. Barker, 42 A.D.2d 428, 348 N.Y.S.2d 581 (3d Dep't 1973); Bartlett v. New York, 40 A.D.2d 267, 340 N.Y.S.2d 63 (4th Dep't 1973); Dillon v. Humphreys, 56 Misc.2d 211, 288 N.Y.S.2d 14 (Sup.Ct. 1968). Additionally, the court finds that plaintiff was operating the automobile in the manner intended and that he in no way contributed to the accident. Accordingly, both Chrysler, as the manufacturer of the car, and Woodbridge as vendor are liable for plaintiff's injuries and damages.

■ In Dole v. Dow Chemical Co., 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972), the New York Court of Appeals enunciated a new rule with respect to the apportionment of damages among joint tortfeasors. Under the new doctrine damages are to be apportioned according to the degree of fault of each of the respective parties. This principle applies to cross claims, Kelly v. Long Island Lighting Co., 31 N.Y.2d 25, 334 N.Y.S.2d 851, 286 N.E. 2d 241 (1972); Frey v. Bethlehem Steel Corp., 30 N.Y.2d 764, 333 N.Y.S.2d 425, 274 N.E.2d 579 (1972), and to breach of warranty actions, Noble v. Desco Shoe Corp., 41 A.D.2d 908, 343 N.Y.S.2d 134 (1st Dep't 1973); see Rubel v. Stackrow, 72 Misc.2d 734, 340 N.Y.S.2d 691 (Sup. Ct.1973). In the case at bar, the primary responsibility for the defective ball joint lies with Chrysler. Woodbridge's degree of fault was minimal in that it could not have discovered the defect and did nothing to create it. Accordingly, Woodbridge is allowed full indemnification over and against Chrysler. Chrysler's cross-claim against Woodbridge and its counter-claim against Francis J. Langford are dismissed.

### Damages

■ Upon all the testimony and credible evidence proffered in this case, the court finds Chrysler liable to the infant plaintiff for the personal injuries sustained. Though there was proof that the infant was not using available seat belts, this will not affect the amount of recoverable damages. Under New York's present doctrine of contributory negligence there can be no mitigation of damages because of a plaintiff's fail-

**1256**

ure to use a safety device unless such omission contributed to the accident which caused plaintiff's injuries. Codling v. Paglia, *supra*; Spier v. Barker, *supra*; Bartlett v. New York, *supra*; Dillon v. Humphreys, *supra*.

■ The injuries sustained by the infant are documented by the various reports and records furnished by St. Vincent's Medical Center, Staten Island, New York. The court therefore finds that as a direct result of the accident in question the infant plaintiff sustained serious injuries. His permanent injuries consist of a small scar located under his lower lip and a chipped tooth. All other injuries have been satisfactorily healed. Accordingly, the court awards the infant plaintiff the sum of $9,000 for his permanent injuries and for his pain and suffering. The father and guardian *ad litem* is awarded the sum of $1,420.70, for the special damages incurred by him.

The foregoing opinion shall constitute the court's findings of fact and conclusions of law, as required by Fed.R.Civ.P. 52(a).

Settle judgment on notice.