James F. Niehoff, J.
Due to some clerical error this matter appeared as an unopposed motion on the December 16, 1974 calendar of Special Term Part I and was granted on default by order dated December 17, 1974. However, it appears that the parties had adjourned the motion, by consent, until December 30, 1974 and, so, this court’s prior decision is hereby vacated and set aside.
This is an action brought by plaintiffs to recover for damages sustained as a result of the alleged negligence and malpractice of the defendant. It is claimed that blood given to the plaintiff Lillian Simone in transfusions was of inferior quality, diseased, impure and infected as a consequence of which she became infected with hepatitis. The original complaint contained a first cause of action based upon alleged negligence and a second cause of action based upon breach of warranty. Plaintiffs now move this court for leave to serve an amended complaint containing a third cause of action grounded upon the doctrine of strict products liability as spelled out in Codling v Paglia (32 NY2d 330).
Ordinarily leave to serve an amended complaint is freely granted absent prejudice or surprise to the defendant (CPLR 3025; Janangelo v Falshaw, 39 AD2d 763). However, denial of leave to serve a supplemental pleading is appropriate when the new material is clearly insufficient to state a cause of action (Keller v Greyhound Corp., 41 Misc 2d 255; B. v B., 78 Misc 2d 112). Such is the case herein.
In order for warranty liability to be found there is a general requirement that a sale must have been made. The question of whether a hospital can be held responsible on the theory of breach of warranty when supplying blood from which a party contacts serum hepatitis was squarely met and answered in the negative by the Court of Appeals in Perlmutter v Beth *165 David Hosp., 308 NY 100, rehearing den 308 NY 812. (See, also, Payton v Brooklyn Hosp., 21 AD2d 898, affd 19 NY2d 610; Carter v Inter-Faith Hosp. of Queens, 60 Misc 2d 733; Davidson v Hillcrest Gen. Hosp., 40 AD2d 693). In that decision the court concluded that the furnishing of blood to a patient is merely incidental to the services rendered and does not constitute a sale. That holding has been codified and is now set out in subdivision 4 of section 580 of the Public Health Law which states that "the collection, processing, storage, distribution or use of blood or a blood derivative for the purpose of diagnosis, prevention or treatment of disease or the assessment of medical condition is hereby declared to be a public health service and shall not be construed to be, and is declared not to be, a sale of such blood or blood derivative, for any purpose or purposes whatsoever.”
While the Court of Appeals in Codling (supra) extended a manufacturer’s liability to a nonpurchasing nonuser of a product there is nothing in that opinion from which it can be concluded that the Court of Appeals is of the view that the concept of strict liability is to be applied to the furnishing of services, e.g., the supplying of blood by means of a transfusion. The essence of the strict products liability doctrine as set forth in Codling (supra) is that a party injured by a defective product may recover damages from the manufacturer of that defective product, without the requirement of proving that the manufacturer was negligent. The reported strict liability cases following Codling have all involved normal commercial transactions wherein a product which allegedly caused injury was placed on the market and was made available to the public through the stream of commerce for the purpose of profit. None has held or suggested that the furnishing of services is encompassed by the doctrine.
Recently in Shepard v Alexian Bros. Hosp. (33 Cal App 3d 606) the Court of Appeal, Division 2, was called upon to decide the question of whether or not a blood transfusion, the alleged cause of the plaintiffs \ injury, constituted a cause of action under the doctrine of strict liability. At issue therein was a statute adopted by the State of California (Health and Safety Code, § 1606) which is not unlike subdivision 4 of section 580 of the Public Health Law. It is interesting to note that the rationale behind section 1606 was expressed in the Perlmutter case (supra). The court held (p 610) that "since section 1606 and its underlying rationale compel the conclusion that a *166 blood transfusion must be regarded as a service, the doctrine of strict liability in tort is inapplicable as a matter of law.” The court further stated (p 611): "The patient who enters a hospital goes there not to buy medicines or pills, not to purchase bandages, iodine, serum or blood, but to obtain a course of treatment (Perlmutter v Beth David Hospital, supra, [123 NE2d at pp 795-796]; Silverhart v Mount Zion Hospital [1971], 20 Cal App 3d 1022, 1027 [98 Cal Rptr 187]). It is also obvious that in the normal commercial transaction contemplated in the strict liability cases the essence of the transaction relates solely to the article sold, the seller is in the business of supplying the product to the consumer and it is that, and that alone for which he is paid (Magrine v Spector [1968], 100 NJ Super. 223 [241 A2d 637]). The foregoing marked distinctions compel the conclusion that a hospital is not engaged in the business of distributing blood to the public and does not put the blood as a product on the market in order to proñt therefrom. ”
In my judgment the rationale of the Shepard case (supra) is sound and should be adopted as the law of this State. Like the California Court of Appeal, I am disposed "to adhere to the time-honored, well-established law which states that those who sell their services for the guidance of others in their economic, financial and personal affairs are burdened only with a duty of reasonable performance under the circumstances and cannot be made liable in the absence of negligence or intentional misconduct [cases cited]” (pp 613-614).
In light of the above, plaintiffs’ motion for leave to serve the amended complaint is denied.