# (December 23, 1981)

■ PEARL M. ELLSWORTH et al., Respondents, v GENERAL MOTORS CORPORA-TION, Appellant. (Action No. 1.) BETTY J. THRASHER et al., Respondents, v GENERAL MOTORS CORPORATION, Appellant. (Action No. 2.) — Appeals from judgments of the Supreme Court in favor of plaintiffs, entered August 18, 1980 and August 20, 1980 in St. Lawrence County, upon a verdict rendered at Trial Term (Ford, J.). Early on the afternoon of November 3, 1973, plaintiffs Betty Thrasher and Pearl Ellsworth left their respective homes in St. Lawrence County in Mrs. Ellsworth's new 1973 Chevrolet Chevelle Malibu to shop and visit friends and relatives in and near the hamlet of Santa Clara in Franklin County. After dinner, following an afternoon and evening of socializing, they headed home with Mrs. Thrasher at the wheel. En route they stopped at the Starlight Inn, where, according to Mrs. Thrasher, she consumed a bottle of beer. While there, they encountered plaintiff DeForrest Ellsworth, the son of plaintiff Pearl Ellsworth. Mrs. Thrasher described DeForrest as being "really drunk". Upon leaving the inn, DeForrest was placed in the rear seat of the car and he has no recollection of the relevant events preceding the accident. As they resumed their journey, Mrs. Thrasher was driving with Mrs. Ellsworth occupying the front passenger seat, and they proceeded along Route No. 11 until turning onto St. Lawrence County Highway No. 41. While proceeding on No. 41 Mrs. Thrasher negotiated a left turn and then was "going straight again" when, according to her testimony, the car seemed to drift to the left. The car proceeded across the left lane to the shoulder and continued on for a distance of approximately 171 feet. Her efforts to turn to the right succeeded at that point as she heard a snap or felt a giving in the steering mechanism, whereupon the vehicle turned abruptly to the right and moved on a distance of about 176 feet across the highway, along the right shoulder and across a grassy area until it came to a stop after striking a house. Mrs. Thrasher estimated her speed just prior to the incident as being between 40 and 50 miles per hour and did not recall whether she applied the brakes. There was some testimony as to brake and skid marks along the vehicle's path. All three occupants suffered personal injuries, and actions therefor, as well as derivative actions, were commenced on their behalf against the General Motors Corporation (GM) grounded in negligence and strict products liability. After a joint trial of the issues, the jury found that the accident was caused by a defective steering mechanism and that GM was guilty of negligence in that it placed a defective vehicle in the stream of commerce. The jury also found that plaintiffs were free from contributory negligence. On appeal, GM contends that several errors were committed during the trial, each of which was of such serious dimension as to mandate reversal. Among the claimed errors was the court's refusal to charge, despite defendant's urging, subdivision (a) of section 1120 of the Vehicle and Traffic Law which, in relevant part, provides that a vehicle "*shall be driven upon the right half of the roadway*" (emphasis added). It is to be remembered that during the long trial the issues were vigorously and exhaustively contested. Plaintiffs, through their experts, sought to establish that a deficiency or deficiencies in the power steering mechanism caused the accident. Defendant, on the other hand, presented expert testimony to the contrary and contended that the accident was caused by the negligent operation of the vehicle. Distilled down for simplification, the real issue was whether the accident was caused by mechanical failure or driver error. In our view, the evidence in this case and the conflicting theories advanced mandated that subdivision (a) of section 1120 of the Vehicle and Traffic Law be charged specifically, or at least in language which approximated the meaning of that

subdivision. The court's charge on the subject of the driver's duty of care was very general and referred to the reasonable care and prudent driver dictates only as they related to the driver's duty of care when confronted with an emergency. The duty to keep to the right was not mentioned nor was there ever any indication given that negligence could be inferred from a failure to drive on the right-hand side of the road. In fact, in one of the court's few references to any possible negligence on the part of the operator, by implication it confined any possible negligent conduct to plaintiff operator's attempt to turn right so as to get back on the highway. Instructions that do not approximate the meaning of the Vehicle and Traffic Law provision and that give no indication that negligence may be inferred from the violation alone deprive a litigant of a substantial right accorded by law too grave to be overlooked (*Coury v Safe Auto Sales,* 32 NY2d 162, 164; *Green v Downs,* 27 NY2d 205). The mere recital of general rules respecting a driver's duty of reasonable care is no fair substitute for the wording of the statutes (*Schiffer v Korman,* 40 AD2d 681). The charging of subdivision (a) of section 1120 of the Vehicle and Traffic Law and thorough instructions were mandated here particularly in view of the lack of explanation, in any manner, by plaintiffs' experts for the "drifting to the left" theory advanced by the driver, and for the further reason that contributory negligence is a defense to both negligence and strict products liability claims (*Codling v Paglia,* 32 NY2d 330, 343). In addition to the deficiency in the charge, we also conclude that error was committed by the trial court when, after admitting into evidence certain letters from defendant to the National Highway Traffic and Safety Administration (NHTSA) concerning customer complaints relating to the power steering mechanism, it refused to admit NHTSA's closing memorandum which found "[n]o trend of lockup, binding or self-steering * * * in the Saginaw power steering gear assemblies. There is no basis for believing that such a trend did, in fact, exist or that one will develop in the future". We reach no other issue. Judgments reversed, on the law, and the matter remitted for a new trial with costs to abide the event. Mahoney, P. J., Main and Yesawich, Jr., JJ., concur.

Mikoll and Herlihy, JJ., dissent and vote to affirm in the following memorandum by Herlihy, J. Herlihy, J. (dissenting). Plaintiff Pearl Ellsworth purchased a new 1973 Chevrolet manufactured by defendant General Motors Corporation. On November 3, 1973, when the car had the relatively low mileage of about 1,500 miles, she allegedly experienced momentary difficulties with its steering. Later in the day, plaintiff Betty Thrasher was operating the vehicle with the Ellsworth plaintiffs as passengers when it allegedly became difficult or impossible to steer, going first across the left lane onto the left shoulder and then, when she was suddenly able to turn the steering wheel right, going out of control until it struck a building. Plaintiff DeForrest Ellsworth had no personal knowledge of the above events as he was not in the vehicle when Pearl Ellsworth initially had steering difficulties, and he was asleep in the vehicle at the time Betty Thrasher had the accident. Plaintiff Pearl Ellsworth was unable to recall any of the events directly involved in Betty Thrasher's accident. Betty Thrasher and Pearl Ellsworth gave their testimony as to the accident and the difficulties steering the vehicle on November 3, 1973. There was no other eyewitness although other witnesses described the accident scene following the accident, giving evidence of the physical condition of the path followed by the car, the condition of the car itself, and the building with which it collided. Plaintiffs offered expert evidence tending to establish that the steering mechanism was defective when it left the control of defendant. Further, evidence was adduced which tended to establish that defendant was aware of a potential contamination of the fluid in its

steering mechanism by a deposit of metal particles in the manufacturing process of the steering mechanism and took no steps to remedy that condition on the Ellsworth vehicle. Although defendant offered expert testimony and established various facts which could have resulted in a verdict of no cause of action in the cases of Pearl Ellsworth and Betty Thrasher, the jury found those plaintiffs free from contributory negligence and further found that defendant was negligent in its placement of the vehicle in the stream of commerce and that the steering mechanism was defective when it left the factory as well as at the time of the accident. The jury found that a defect in the steering mechanism was the proximate cause of the accident as well as that the negligence of defendant was a proximate cause of the accident. Plaintiffs factually established a prima facie case both on the grounds of strict products liability and negligence and the jury verdicts were not against the weight of the evidence. (See *Caprara v Chrysler Corp.,* 52 NY2d 114; *Micallef v Miehle Co., Div. of Miehle-Goss Dexter,* 39 NY2d 376, 385, 387-388.) Defendant also asserts several errors relating to the admissibility and exclusion of evidence, the trial court's charge to the jury, the refusal of the trial court to make certain charges, and includes in its statement of questions presented: "Was the verdict the result of a prejudiced jury?" Upon considering all of defendant's arguments, it is our view that either singularly or collectively they do not provide a basis for reversal of the judgment for legal error. Examination of the record reveals that the Justice presiding at the Trial Term fairly and impartially considered all questions submitted to him by the parties before, during, and after the trial. In this context, the refusal to admit the entire file of defendant relating to its correspondence with a Federal agency (the United States Department of Transportation's National Highway Traffic and Safety Administration) was not reversible error. Assuming it was error, it is not so prejudicial as to warrant a new trial in view of the clear finding of strict products liability by the jury and, further, the correspondence admitted in evidence shows a complete investigation by defendant. It should be noted that the court charged: "Defendants' experts testified that the power steering system is designed and manufactured so that metal particles and wear debris cannot cause a malfunction." Finally, the refusal of the trial court to charge section 1120 of the Vehicle and Traffic Law on the question of contributory negligence of Betty Thrasher was not reversible error as concluded by the majority. The statute requires drivers to drive on the right side of the road and plaintiff Betty Thraser clearly did cross into the left lane of the highway. However, there is no proof in this record that the failure to keep right, a violation of the statute, in any way contributed to the accident. The statute governs the right of way of vehicles on the highway and the present accident was totally unrelated to the statutory right of way for this vehicle. While a failure to obey the directive of the statute does support an inference of negligence, there is no possibility that such a failure constituted contributory negligence in *this* case. In its charge, the trial court specifically set forth the contention of defendant "that this accident occurred because Betty Thrasher was guilty of negligence in the operation of the vehicle in that she steered the vehicle to the left and onto the left shoulder of the road". The charge, in its entirety, was not prejudicial to defendant on the issue of contributory negligence. The court submitted to the jury eight specific questions concerning the law of products liability and negligence as to all parties. That the jury understood the issues involved is best exemplified by its answers to the questions resolving the issue of products liability in favor of plaintiffs, and the issue as to negligence was likewise answered in favor of plaintiffs. The judgments should be affirmed.