Fuchsberg, J.
(dissenting). While I share the majority’s opinion that the parties were bound by the legal instructions in which they acquiesced, we part company on the issue of GM’s preservation of the inconsistency inherent in the complex of verdicts as they were reported by the jury.
The verdicts eventuated from an automobile accident which occurred in a 50-mile per hour zone of a two-lane highway in Ramapo, Rockland County, when, as some of the testimony later was to develop, a Chevrolet Nova, of *807 General Motors Corporation (GM) manufacture, made an unexpected left turn at approximately 55 to 60 miles per hour into the path of opposing traffic. There it crashed with great force into a station wagon registered in the name of Robert McElroy and then operated by his wife, Beverly. At the time, the Nova, owned by Janice E. Manglass, was being driven by her husband, Gary A. Manglass. Mr. Manglass was alone in the car.
A series of lawsuits followed. One, for personal injuries sustained by Joanna Barry and her daughter, Jo Anne, passengers in the McElroy vehicle, was commenced on negligence and strict products liability theories against GM, and against the Manglasses and the McElroys in negligence alone; Richard J. Barry, as husband of Joanna and father of Jo Anne, joined derivative loss of services causes.[1] Actions for their injuries were also initiated by Beverly McElroy and her daughter Margo, who also was a passenger; husband and father Robert here too joined derivative causes, as well as one for the destruction of his station wagon; their cases, brought on like liability theories, named GM and the Manglasses alone. Finally, Gary Manglass, for his personal injuries, and Janice, for the damage to the Nova, sued GM, their actions sounding in negligence and breach of warranty, express and implied.
In essence, the thrust of all the claims against GM was that the Nova’s motor mounts, whose function is to fasten the engine to the frame of a motor vehicle, were so defectively designed that one of them separated, thus causing the engine to lift, the accelerator to jam and its driver to be deprived of control. During the battle between experts which later was to dominate the trial, GM’s position, inter alia, was that, whatever its experience with these motor mounts in other circumstances,[2] in this instance the separation was a consequence rather than a cause of the collision. In any event, by then, all the actions had been joined for trial, of which there now have been two.
*808 The first of these resulted in general verdicts for the Barrys and the McElroys for sums totaling $850,000 and $19,000, respectively. However, the ensuing judgments, which ran against GM and the Manglasses, were short-lived. Vacated by the Appellate Division for trial errors whose details are not pertinent here, the cases were remanded for retrial of the liability and apportionment issues (55 AD2d 1). It is from the second trial that the present appeal emanates. Again, the jury rendered verdicts for the Barrys and the McElroys against both GM and the Manglasses. Concordantly, it had disposed of Gary Manglass’ affirmative negligence and warranty claims against GM by finding verdicts of no cause.[3]
In contrast to the outcome of the case against her husband, in which, as owner of the Nova, Janice Manglass had to be found vicariously liable to the Barrys and McElroys (Vehicle and Traffic Law, § 388), since she was not present in the vehicle when the accident occurred, conceptually she was not thereby precluded from recovering in her affirmative action against GM (Mills v Gabriel, 259 App Div 60, affd 284 NY 755). Obviously hearkening to an appropriate instruction on that subject, the jury decided for her against GM both in negligence and for breach of warranty.
GM did not appeal the Janice Manglass verdict, which, in due course, became final and binding. But, on the premise that the verdicts were fatally incongruous, it took the Barry and McElroy judgments to the Appellate Division. This claim originally had been articulated when, after the jury had announced its verdicts and before it had been directed to pass on the apportionment question, GM’s trial counsel, contending that there were “clearly inconsistencies” in an exoneration of his client in strict products liability while holding it liable for negligence, asked the court to seek “an advisory verdict” via the submission of a special interrogatory on whether the jury found the motor mount defective. This request was denied.[4] Thereafter, GM *809 fared no better when, in a timely posttrial CPLR 4404 (subd [a]) motion for a new trial,[5] it further developed its inconsistency assertion by pointing out that, since the essential components of breach of warranty and strict products liability are alike, the “divergent findings” for Janice Manglass against GM on the former theory vis-avis the one for GM on the latter, being companion to those in the McElroy suits, also “cannot be reconciled”.
On review, these points were rejected by the Appellate Division and the judgments appealed affirmed. Dealing first with GM’s position that the verdicts against it in negligence had to be at odds with those for it in strict liability, the court noted that the trial court’s delineation of the elements essential to establishing a case in strict liability included a showing that the Nova was being used “for the purpose and in the manner normally intended”, a factor which, as such, was not necessary to the proof of negligence. From this it reasoned that, though a jury finding that Gary Manglass was operating the Nova beyond the range of what was “normally intended” would preclude a verdict for the plaintiffs against GM in strict liability, it nonetheless would not bar a verdict in their favor in negligence.[6] As to GM’s contention that, as relevant in this case, the elements on which Janice Manglass had to depend to sustain her recovery against GM on the warranty claim were concomitant with those on which the Barrys and McElroys were unsuccessful against GM in strict liability, the Appellate Division, without disputing this proposition, chose to assume that the warranty on which Mrs. Manglass had recovered was express rather *810 than implied and, presumably, that the components of the one differed from the other.
In now appraising the correctness of these views, I start with the observation that, as distinguished from a criminal case, where, at least since Justice Holmes’ landmark opinion in Dunn v United States (284 US 390), a jury’s exercise of mercy may adequately explain what otherwise could appear to be an inconsistency (see People v Tucker, 55 NY2d 1; People v Pugh, 36 AD2d 845, affd 29 NY2d 909, cert den 406 US 921; see, also, 18 ALR3d 259, § 2, subd Ob], and cases cited thereat), in a civil suit what is required is a verdict which is logically possible as measured by the charge of the court.
In the context of a jury trial, this has long meant that, to obviate a claim of inconsistency, it must be shown that facts which could be found by the jury, when applied to the law as charged by the Trial Judge, can be made to square with the verdicts in question (see Pangburn v Buick Motor Co., 211 NY 228; Reilly v Shapman Realty Corp., 267 App Div 198). For this purpose, where a verdict is a general one, applicable is the principle that, since the “appellate court cannot know with certainty what led the jury to its conclusion; it must assume that the jury took that view of the facts which justifies its verdict” (Cohen and Karger, Powers of the New York Court of Appeals, §§ 118-119, p 503). Moreover, if parties accept the law as it is laid down to the jury, absent countervailing public policy, for this purpose it is irrelevant that the legal course so charted may, in the abstract, be incorrect (Martin v City of Cohoes, 37 NY2d 162, 165-166; Kaplan v City of New York, 269 App Div 856; 8 Carmody-Wait 2d, NY Prac, p 337).
It follows that the claimed inconsistency is not dependent on the legal validity of the instructions that the proof of the way in which Gary Manglass operated the Nova on the occasion of the accident raised a question of fact as to whether it constituted use “for the purpose and in the manner normally intended”. Suffice it to say, since no exception was taken or further request was made with regard to this instruction, and no contravention of policy is apparent, the parties must be deemed to have consented that this was the law to be applied in the trial from which *811 these appeals originate.[7] So, if we assume, as the Appellate Division did, that the jury found that Gary Manglass misused the Nova, standing alone, this would seem to logically account for the failure of the Barry and McElroy strict liability causes. It then indeed could be said, to borrow the language of that court, that “the instructions precluded a verdict in favor of the plaintiffs on strict products liability but nonetheless permitted a verdict against General Motors on negligence”.
But this need only have been true if the strict products liability causes and those which talked in tort terms of negligence were all the jury had decided. Here, instead, there was more, for Janice Manglass’ recovery in warranty introduced a discordant factor which materially affected the intermingled negligence-strict liability equation to whose imbalance GM’s counsel had directed the trial court’s attention.
Specifically, as the record shows, while the trial court told the jury that it could find in her favor for breach of either an express or an implied warranty, in fact the charge it delivered spelled out identical elements for both, again without exception.[8] As applicable to both express and implied warranty, the jury thus was advised that it must find “that at the time of the occurrence plaintiff, Manglass, was using the product, the vehicle, for the purpose and manner intended.” Accordingly, on its face, the jury’s warranty verdict for Janice Manglass could be said to represent an implicit finding that no misuse had occurred.
Yet, this could have been in direct conflict with the finding against GM on the strict liability counts for, there too, in which, for practical purposes, was a duplication of the language it employed in its warranty instructions (see Codling v Paglia, 32 NY2d 330, 342), the court informed the jurors that they could not decide for Janice or the *812 McElroys unless they were convinced that, “at the time of the occurrence, the accident, this Nova, was in fact being used for the purpose and in the manner normally intended”. Further analysis, however, does not dictate an assumption that the verdicts for GM in strict liability had to be based on a finding of misuse. Alternatively, a jury determination of no misuse could be harmonized with Janice’s verdict, if we hypothesize that the jury found that either the alleged defect or its causative role had not been established. After all, since the court had charged that the three disputed elements essential to the plaintiffs’ strict liability case were a defective product, causation and absence of misuse, failure to satisfy the jury on any one of these would offer an equally logical explanation for GM’s success on this phase of the case.
From all this, logic also compels us to conclude that, if the jury was not persuaded that the motor mount was defective or that the defect was a proximate cause of the accident, this, in turn, would be inconsistent with the verdict against GM in negligence, the court having correctly charged that each of these was a sine qua non for a plaintiffs’ recovery under this rubric. Consequently, while any attempt to synchronize the strict liability verdicts with the one for Janice Manglass in warranty inevitably discloses a flagrant inconsistency, if, instead, one juxtaposes the strict liability verdicts against those in negligence, as GM did when it initially presented the problem, an equally hopeless inconsistency emerges. For, as we have seen, whether one enters the discussion of these inextricably confused verdicts through the portal of the McElroy v GM causes in negligence and strict liability or that of Janice Manglass v GM in negligence and warranty, the ultimate finding must be one of legally intolerable inconsistency.[9]
Under these circumstances, the requirement which the majority would impose, that counsel have explored all facets of the inconsistency in the immediacy of the reporting of the verdict, is unreal. This was not a case in which *813 written interrogatories had been submitted to the jury; then, perhaps, some might expect counsel to discern from the jury’s answers whether its findings are consistent with each other or with the general verdict (see CPLR 4111, subd [c]). But, in this case, involving nine parties, three separate theories of recovery and a general verdict, such a requirement is patently unreasonable. To expect counsel, at the peril of his client’s rights, to fathom the myriad lines of reasoning which the jury might have followed in reaching their conclusions, all in the spontaneity of the tension-filled moments after the pronouncements of the verdicts, is to make our preservation practice a test of gamesmanship rather than a fair procedural device.[10] That counsel did not immediately seize upon the exact analysis is no more than practicably could have been anticipated. That he perceived an inconsistency and promptly articulated it as best he could at the moment is to his credit.
Indeed, the additional time granted by the trial court to make postverdict motions indicates an intent to permit the parties to undertake a more studied presentation. The issue of inconsistency between the Janice Manglass warranty verdict and those for the McEÍroys in negligence and strict liability having been fully explored at that time, a reasonable reading of the Civil Practice Law and Rules in any event would find it reviewable on this appeal (CPLR 4404, 5501, subd [a], par 2; cf. CPLR 4017, 5501, subd [a], pars 3, 4; see, also, Pangburn v Buick Motors, 211 NY 228, supra; see, also, 8 Carmody-Wait 2d, NY Prac, § 58.18; 4 Weinstein-Korn-Miller, NY Civ Prac, par 4404.22).
In fine, that the permeating inconsistency here exists is now no longer controverted. That the announcement of the verdicts in which it inhered had to have come as a surprise, if not as a shock, to GM’s counsel is unquestionable. That the full extent of the inconsistency was not likely to be appreciated is proved by the cold fact that, given the multiple opposing parties and the varying causes of action, the number of verdict combinations that were possible was *814 65,536 (2 to the 16th power). The neutral Trial Judge, whose exposure to the case stretched over a trial of some three weeks, did not appreciate the inconsistency, either when first raised, or when the apportionment verdicts came in, or when fully presented on the formal CPLR 4404 motion. The Appellate Division, after extensive appellate review, did not perceive its existence. And, our court, in the relatively unhastened and contemplative collegial setting of a court of highest jurisdiction, having afforded the inconsistency some judicial perception for the first time, nevertheless is reduced to holding conscientious counsel to the hindsight of a mental and emotional Gargantua. As such, he is now held, for the first time in any reported case, to have had the savoir faire to have “applied to retain the jury for a reasonable time, in light of the complexities involved, to allow counsel[11] to study the problem and more clearly articulate his objection”. If all this is not a denial of fundamental fairness, it certainly smacks of it.
For all these reasons, I believe the order of the Appellate Division should be reversed, the liability judgments appealed from vacated and the case remitted to the Supreme Court for further proceedings.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler and Meyer concur in memorandum; Judge Fuchsberg dissents and votes to reverse in an opinion.
Order affirmed.

. The Barrys’ action as against the McElroys was dismissed at trial.

. As part of their case, plaintiffs introduced portions of recall letters GM sent to Chevrolet owners some time after this accident. The letters warned of the possibility of separation of the engine mounts.

. The governing doctrine at the time of this accident was contributory rather than comparative negligence. In the apportionment phase of its deliberations, the jury ascribed 65% of the negligence to General Motors and 35% to the Manglasses.

. Prior to delivering his original charge to the jury, the Trial Judge thought it best *809 to exercise his discretion by abandoning a plan to submit the case on written interrogatories when he could not persuade' the parties to agree on the language in which these should be framed. (See CPLR 4111; 8 Carmody-Wait 2d, NY Prac, p 328.) It is not claimed in this case that the failure to submit interrogatories was an abuse of discretion as a matter of law.

. The 15-day limit for making the CPLR 4404 (subd [a]) motion was extended by the trial court to give the parties 30 days (CPLR 4405; 4 Weinstein-Korn-Miller, NY Civ Prac, par 4405.05; see Justice Arthur Spatt’s interesting opn on this subject in Ace Wire & Cable Co. v Transamerica Ins. Group, NYLJ, Dec. 8, 1981, p 14, col 2).

. On the distinction between unforeseeable use and contributory negligence, see Hilton, The Strict Products Liability Case — Complaint, Defenses and Instructions (48 Ore L Rev 192, 203). “Contributory negligence is not the same thing as abnormal use; and although the two frequently coincide, one may exist without the other” (Prosser, Torts [4th ed], § 102, p 670, and cases cited in n 79 thereat).

. For this reason, I am in accord with the majority that we need not now decide whether, as a matter of law, the conduct of Barry Manglass in the operation of the automobile here could be found to constitute product misuse.

. In submitting a list of the various parties and causes of action to the jury, in response to a request from that body, the trial court also described Janice’s warranty cause as simply one for “warranty”. The jury subsequently so reported its verdict without distinguishing between express and implied warranty.

. None of this is any less so because the unappealed Janice Manglass warranty verdict is now final and binding. Whatever this finality portends by way of issue preclusion at a new trial, for present purposes we treat only with the part this verdict played in the skein of inconsistency which runs through these verdicts as a whole as of the time they were rendered.

. The record shows that counsel prefaced his remarks to the court with the statement: “Judge, I think everybody ought to think very clearly before we let this jury go in this posture. *** I think I am correct in analyzing the verdict, at least the limited time I have had to think about it, in saying there are clearly inconsistencies” (emphasis, of course, added).

. As already indicated (n 10) when the verdicts were reported counsel stated both his concern about “inconsistencies” and “the limited time I have had to think about it”, which, unless one strains for hypertechnicality, must be taken to evidence a desire for more time, which the Trial Judge could hardly have failed to have in mind when he extended the statutory time limit for a CPLR 4404 motion.