OPINION OF THE COURT
Robert A. Harlem, J.
The defendant, Sprague Meter Division of Textron, Inc. (hereafter Sprague), moves for summary judgment with respect to the first and second causes of action alleged in the complaint based upon strict products liability and negligence together with a dismissal of the cross claim of the defendant, Columbia Gas of New York, Inc. (hereafter Columbia Gas), for contribution.
On February 23, 1979 a building occupied by the plaintiffs was destroyed by fire. It is claimed that the conflagration was caused by a defective gas regulator installed by Columbia Gas in or about 1953 and manufactured by Sprague Meter Company, Inc. The assets of Sprague Meter Company, Inc., were acquired in April, 1961 by Textron, Inc., for the sum of $7,200,000, and thereafter Sprague Meter Division of Textron, Inc., was created. The transaction was one whereby the assets of the old company were acquired, with Sprague Meter Company, Inc., becoming known as S. M. Liquidating Company. Textron did not retain any of the directors of the Sprague Meter Company, *537 Inc., but it did keep three of its officers, and continued, through its new division, to manufacture the same product line as before the acquisition. The agreement which led to the takeover of assets, contained the following clause: “3. Assumption of Liabilities by Textron, (a) On the terms and subject to the conditions set forth in this Agreement, from and after the Closing Date, Textron shall assume and agrees to pay, perform and discharge all obligations and liabilities of Sprague, fixed and contingent, all as the same shall exist at the Closing Date, including without limitation, all obligations and liabilities of Sprague under express and implied warranties pertaining to products, goods and services manufactured or furnished by Sprague and under open purchase orders, sales contracts and supply contracts; provided, however, that Textron does not assume and does not agree to pay, perform and discharge (i) any obligations or liabilities of Sprague under this Agreement, (ii) any obligations or liabilities of Sprague to its shareholders as such except as expressly provided in this Agreement, and (iii) any obligations or liabilities of Sprague arising or incurred after the Closing Date, except as expressly provided in this Agreement.”
It is well settled that the drastic remedy of summary judgment is available only where there is no material and triable issue of fact, issue finding rather than issue determination being the key to the procedure (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395).
Textron takes the position that under the takeover agreement it did not assume liabilities premised upon negligence or strict products liability, but that its contractual undertaking was limited to claims for violations of express and implied warranties pertaining to products, goods and services manufactured or furnished by its predecessor. It further contends that no liability was assumed under the contract for claims predicated on causes of action which did not exist at that time. More specifically, it is said that as of the date of the takeover, there was no such cause of action as one for strict products liability.
The general development of the law concerning the liability of a successor corporation which has acquired the assets of another corporation is somewhat limited. The *538 general rule prevails that in the absence of a statute, a corporation acquiring the assets of another such entity does not thereby become liable for the debts' and obligations of the transferor, but such liability may be imposed where one finds an express or implied assumption of such obligations, or where the transaction amounts to a consolidation or merger of the two corporations, or where the transferee is a mere continuation of the transferor. It is also true, however, that courts seem generally to have narrowly construed contractual provisions on such takeovers as such terms relate to liability for acts performed by the transferor (66 ALR3d 827, 828).
It would seem that the precise issue offered for resolution in this action has not been squarely addressed in the State of New York. The Court of Appeals in Hartford Acc. & Ind. Co. v Canron, Inc. (43 NY2d 823) did pass upon and acknowledge the general criteria for successor liability as set forth above. The court, in that decision, looked to the agreement to find any express or implied assumption of tort liability, inquired into whether there was a consolidation or merger of the two corporations, sought to determine whether the purchase was not a mere continuation of the selling corporation, and, lastly, considered whether any fraud was practiced in the acquisition. It is interesting, however, that the court declined to stake “out the perimeters of tort liability for a successor entity”.
In Emrich v Kroner (79 AD2d 854) the court sustained the liability of a successor corporation on an asset takeover where the acquisition agreement contained an assumption of tort liability by the successor. The language of the agreement is not set forth in the opinion of the court. It is also worthy of note that the court did not distinguish among claims based upon negligence, breach of warranty and strict products liability, and how each of these was treated in the acquisition agreement. The court did not address the question of whether strict products liability could have been assumed in the acquisition agreement, since the product'in that case was also manufactured in the 1950’s and the acquisition occurred in the 1960’s.
It would seem to be fairly clear in the present action that there was no express agreement on the part of Sprague to *539 assume liability predicated upon claims of negligence. The acquisition agreement is limited by its terms to obligations and liabilities under express and implied warranties. Nothing has been presented to the court which would warrant a finding of implied commitment to assume such responsibilities. Specific consideration has been given to each of the elements which have been addressed by the Court of Appeals in the Hartford Acc. & Ind. Co. case (supra) and as recited in 66 ALR3d 827 and 828. There is no evidence that any of the standards for such implied obligations have been established, and no implied commitment can be spelled out.
With respect to the cause of action for strict products liability, the same conclusion cannot be reached. While it may be true that the initial enunciation of a “strict products liability” cause of action in New York State was set forth in Codling v Paglia (32 NY2d 330), this does not compel the conclusion that such a cause of action therein had its origin. Interestingly, the Court of Appeals itself observed that: “The development of what we now call the doctrine of strict products liability has been both tortious and spasmodic * * * In reaching and articulating our decision in Codling, we neither created nor discovered a new cause of action. On the contrary, in extending the remedy to plaintiffs who were neither buyers nor users of the product, we recognize in its modern guise a pre-existing theory of liability which had been evolving and maturing over the years, sometimes having been described by use of the phrase ‘breach of implied warranty’.” (Victorson v Bock Laundry Mach. Co., 37 NY2d 395, 401.)
Inasmuch as it could be said that the term implied warranties as contained in the acquisition agreement embraces a cause of action for strict products liability, it is the view of this court that the agreement to pay obligations of the predecessor corporation included claims predicated on strict products liability.
The motion is therefore granted to the extent that the judgment is allowed against the plaintiff on the cause of action premised upon negligence; the motion is denied on the cause of action for strict products liability; and with *540 respect to the cross claim, to the extent that it is based upon a claim of negligence, it is dismissed, but it shall retain its vitality for all other purposes.