*390
 
 OPINION OF THE COURT
 

 Smith, J.
 

 Defendant, the prior owner of an embossing machine, built into the machine a protective guarding system for its own use, not for purposes of market sale. We hold that in the circumstances presented defendant, as a “casual manufacturer,” cannot be held liable to the plaintiff-user in strict products liability or negligent design but is under a duty to provide plaintiff adequate warnings, a duty that was discharged here:
 

 Plaintiff, Scott Gebo, an employee of Knowlton Specialty Papers, was injured on October 24, 1990, while operating a combination saturator/dryer line and paper embossing unit. Plaintiff’s hand became caught in the unit’s “nip” point — the point at which two high-speed spinning rollers meet. As a result, he suffered the loss of four of his fingers. Knowlton Specialty acquired the paper mill and its contents some three and a half years prior to the accident. The unit itself had originally been purchased by defendant, Filtration Sciences, more than two decades earlier, in 1966, from third-party plaintiff Black Clawson Company.
 
 [1]
 
 Over the years, defendant made numerous changes to the embossing unit, including the addition of a saturator/dryer line, and the design and installation of a protective guarding system.
 

 The guarding system was intended to provide protection to the unit’s operator from the dangers of the high-speed nip point. The system itself contained a guard panel, which, when raised, served to protect the operator from the nip point. On October 24, 1990, the system failed, allowing the unit to operate with the guard panel down and nip point exposed. Investigation revealed that the system’s failure was caused by a build-up of resin on the unit and safety system. A natural byproduct of the paper manufacturing process, the resin would, left unattended, eventually envelop the system’s microswitch,
 
 *391
 
 causing it to malfunction, and allowing the unit to continue operating even with the guard panel down and nip point exposed. Moreover, while the unit did have an emergency shut-off switch, the switch was located high above the hood of the dryer line, neither readily visible nor accessible for use in an emergency.
 

 Plaintiff commenced this personal injury action alleging claims in strict products liability, negligent design, failure to provide adequate warnings and breach of warranty. Under those theories, plaintiff claimed that defendant was liable for its design, manufacture, location, installation, warnings, maintenance and sale of the saturator/dryer line, embossing unit and safety guarding system. Plaintiff further alleged that defendant was liable for its failure to provide the unit with an available emergency shut-down switch and for the negligent positioning of the microswitch in a place where it would become covered with resin and malfunction. Thus, plaintiff claimed that the embossing unit was unsafe for its intended use by the operator.
 

 Following discovery, defendant moved for dismissal, arguing that it could not be held liable in strict products liability, negligence, breach of warranty or for the failure to provide adequate warnings. Although defendant admitted to its design, assembly and installation of the guarding system, it claimed that it had done so for its own use, and not with the intent of market sale. Defendant claimed that it was not regularly engaged in the manufacture or sale of anything other than paper, and, at most, it could be considered only a “casual/ occasional” seller in the marketplace. Therefore, defendant argued that it could not be required to answer claims in strict products liability or negligence.
 

 Supreme Court agreed, granted the motion for summary judgment, and dismissed all claims. The court agreed that defendant was neither a manufacturer nor a regular seller of paper mills, mill-associated fixtures or manufacturing equipment, but had engaged in a one-time bulk sale of its mill and equipment. Therefore, the court concluded, defendant could not be liable in strict products liability or negligence. In dismissing the claims in negligence, the court ruled that “more than one casual sale of an item ‘manufactured’ or ‘assembled’ by a business for its own use and not for sale to the public is required to maintain a negligence claim against it.” The court further found that the same considerations that undermined plaintiff's claims in strict products liability and negligence also barred
 
 *392
 
 plaintiffs claim for failure to provide adequate warnings. While defendant had a duty to warn of known defects which were not obvious or readily discernible, the court concluded that prior, to plaintiffs accident, his employer had been aware of the unit’s resin-related problems and had failed to take any steps to counteract plaintiffs exposure to the danger. Thus, there was no causal connection between Filtration Sciences’ failure to provide plaintiff adequate warnings and plaintiffs injury, making summary judgment proper.
 
 [2]
 

 On appeal, the Appellate Division affirmed the grant of summary judgment for the reasons stated by Supreme Court (244 AD2d 870). We granted leave to appeal and now affirm.
 

 Under New York law, it is well settled that a manufacturer may be held liable for placing into the stream of commerce a defective product which causes injury. A product may be defective by reason of a manufacturing flaw, an improper design, or a failure to provide adequate warnings for the product’s use
 
 (Liriano v Hobart Corp.,
 
 92 NY2d 232). Where a defective product is sold by a seller, dealer or distributor engaged in its normal course of business, the burden of strict liability has been imposed
 
 (see, Stiles v Batavia Atomic Horseshoes,
 
 81 NY2d 950;
 
 Velez v Crain & Clark Lbr. Corp.,
 
 33 NY2d 117). Similarly, the manufacturer of a defective product engaged in its normal course of business may also be held strictly liable for injuries caused by a product, regardless of privity,- foreseeability or the exercise of due care
 
 (see, Voss v Black & Decker Mfg. Co.,
 
 59 NY2d 102;
 
 Codling v Paglia,
 
 32 NY2d 330).
 

 We next apply these principles to the “casual manufacturer.” Central to our decision today is the affirmed finding, supported by the record, that Filtration Sciences built the protective guarding system for its own use, not to sell or transfer to another. We leave for another day the task of defining the precise outer boundary of casual manufacturer status.
 

 The decision to impose strict liability rests largely upon matters of public policy
 
 (see, Sukljian v Ross & Son Co.,
 
 69 NY2d 89, 94-95;
 
 Victorson v Bock Laundry Mach. Co.,
 
 37 NY2d 395, 401). In the past, we have discussed some of the policy considerations which favor the imposition of strict liability upon manufacturers, stating:
 

 
 *393
 
 “Given the increased complexity of modern products and modern production methods, most often only the manufacturer ‘can fairly be said to know and to understand when an article is suitably designed and safely made for its intended purpose’; by the same token, the manufacturer most often ‘alone has the practical opportunity, as well as a considerable incentive, to turn out useful, attractive, but safe products’”
 
 (Sukljian v Ross & Son Co.,
 
 69 NY2d, at 95 [citing cases]).
 

 In
 
 Sukljian v Ross & Son Co. (supra),
 
 we recognized that not every seller of goods is properly subject to the imposition of strict liability. There, we concluded that in contrast to the strict duties and liabilities imposed upon manufacturers and sellers in the normal course of business, a much more limited duty is imposed upon casual sellers. For those casual sellers, there exists only a duty to “warn the person to whom the product is supplied of known defects that are not obvious or readily discernible”
 
 (id.,
 
 at 97). Inasmuch as the casual seller “is not part of the regular commercial network for that product”
 
 (id.),
 
 no greater duties are imposed.
 

 Our decision in
 
 Sukljian
 
 to withhold the imposition of strict liability upon casual sellers was based upon the conclusion that those considerations which justify the imposition of strict liability upon manufacturers and sellers in the normal course of business “lack applicability in the case of a party who is not engaged in the sale of the product in issue as a regular part of its business”
 
 (id.,
 
 at 95). In the case at bar, plaintiff claims that because defendant designed, assembled, installed and sold the modified embossing unit, defendant must be held to the same standard as a product manufacturer. We disagree. Filtration Sciences’ single act of design and assembly does not without more make it equivalent to a product manufacturer. We agree with both Supreme Court and the Appellate Division that at most defendant was subject to the same limited duty as a casual seller
 
 (Sukljian v Ross & Son Co.,
 
 69 NY2d, at 97).
 

 In
 
 Sukljian
 
 we also rejected a claim that the casual seller should be held liable for negligence (69 NY2d, at 97). There we noted that any determination of negligence should begin with the policy issue of whether a duty was owed. We concluded that “the duty of a casual or occasional seller would be to warn the person to whom the product is supplied of known defects that are not obvious or readily discernible” (69 NY2d, at 97). We reach that same conclusion here for the casual manufacturer.
 

 
 *394
 
 Manufacturers and sellers in the normal course of business are liable for injuries caused by ordinary negligence, and are therefore under a duty to exercise reasonable care so as to avoid the occurrence of injuries by any product which can reasonably be expected to be dangerous if negligently manufactured or sold (see,
 
 Codling v Paglia,
 
 32 NY2d 330, supra;
 
 MacPherson v Buick Motor Co.,
 
 217 NY 382; Restatement [Second] of Torts, § 395, comment
 
 a,
 
 at 326). The justification for the imposition of ordinary principles of negligence liability upon manufacturers:
 

 “rests upon the responsibility assumed by the manufacturer toward the consuming public, which arises, not out of contract, but out of the relation resulting from the purchase of the product by the consumer; upon the foreseeability of harm if proper care is not used; upon the representation of safety implied in the act of putting the product on the market; and upon the economic benefit derived by the manufacturer from the sale and subsequent use of the chattel” (Restatement [Second] of Torts § 395, comment
 
 b,
 
 at 326-327).
 

 In the instant case, it cannot be said that the policy considerations which serve to justify the imposition of ordinary negligence liability upon the manufacturer and the seller in the normal course of business apply with equal weight and force to defendant. As a casual manufacturer, Filtration Sciences cannot be said to have derived significant commercial or economic benefit from the one-time bulk sale of its paper mill and embossing unit. Furthermore, as the purchaser of a product from a casual manufacturer, Knowlton Specialty Papers cannot be said to have held the same type of consumer expectations that Filtration Sciences would continue to stand behind its goods. Defendant was a direct commercial participant in the paper manufacturing market. Plaintiffs injuries, however, did not arise from defendant’s activities within the paper market. They instead arose from the one-time bulk sale of its mill and manufacturing equipment and the purchaser’s subsequent use of that equipment, events which were not foreseeable at the time the guarding system was designed. Therefore, plaintiffs negligence claims against defendant were properly rejected.
 

 As a casual manufacturer, although Filtration Sciences could have been held to answer for the failure to provide ade
 
 *395
 
 quate warnings to the product’s user, and is under a duty to warn of known defects in its product which are not obvious or readily discernible, we conclude that such a duty was discharged here. As Supreme Court noted, there exists a wealth of uncontroverted evidence in this case that Knowlton Specialty Papers, both the long-time owner of the embossing unit and plaintiffs employer at the time of the accident, was aware of the very problems which led to plaintiffs injuries. It is also undisputed in this case that Knowlton’s awareness of the problems was widespread among its supervisors and employees. In fact, in a meeting which occurred just days prior to plaintiffs accident, Knowlton’s safety committee specifically addressed the problems being caused by the resin. Knowlton failed, however, to take any additional defensive actions. We agree with Supreme Court that any causal connection between the negligent acts or omissions of Filtration Sciences, in its alleged failure to provide plaintiff adequate warnings and the injuries which later resulted was sufficiently negated. Additionally, by the existence of these very same factors, the danger, at a minimum, was “readily discernible”
 
 (Sukljian v Ross & Son Co.,
 
 69 NY2d, at 97).
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Bellacosa, Levine, Ciparick and Wesley concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . Prior to the date of the accident, Filtration Sciences had sold the entire paper mill and all of its manufacturing contents, including the saturator/ dryer line and embossing unit, to Frank Cean, one of the company’s employees. In 1990, Cean assigned his interest to Knowlton Specialty Papers, Inc. Knowlton Specialty Papers was both the owner of the mill and plaintiffs employer at the time of the accident. Although Black Clawson Company was originally a defendant, it obtained a release from plaintiff prior to the motion for summary judgment. “Filtration Sciences” refers to defendants Filtration Sciences, Inc., Knowlton Brothers, also known as Ahlstrom Filtration, Inc., Knowlton Brothers, Inc. and the Eaton-Dikeman Company. In approximately 1983, these various corporate entities were merged into Knowlton Brothers, which was later renamed Filtration Sciences, Inc.
 

 [2]
 

 . Supreme Court also dismissed plaintiffs claim for breach of warranty as time barred. However, no appeal was taken from that branch of the order.