■ RONALD SPRUNG, SR., Respondent, v MTR RAVENSBURG INC. et al., Appellants. [742 NYS2d 438] —Mercure, J. Appeal from an order of the Supreme Court (Keegan, J.), entered June 19, 2000 in Albany County, which denied defendants' motions for summary judgment dismissing the complaint and all cross claims.

Plaintiff sustained the injuries forming the basis for this action in a June 24, 1997 accident that occurred in the course of his employment with General Electric Company. While plaintiff was attempting to extend the cover over a pit housing an industrial lathe, the telescoping steel panels of the pit cover, which also served as the floor of the manufacturing area above and will be referred to as the "retractable floor," came out of their wall enclosures and fell on plaintiff. Despite the undisputed evidence that General Electric installed this retractable

floor device and designed and constructed the foundation wall cavity housing its steel panels, which should have, but did not, secure the outermost sections, plaintiff seeks to recover in strict liability, negligence, breach of warranty, misrepresentation and failure to warn against defendant MTR Ravensburg Inc., the manufacturer of the industrial lathe, defendant VF Conner Inc.,* the fabricator of the steel panels, and defendant Gordon Bell, Conner's president. Defendants appeal Supreme Court's order denying their motions for summary judgment dismissing the complaint and all cross claims against them.

Because we conclude that plaintiff failed to oppose defendants' prima facie evidentiary showings with competent evidence raising a material question of fact as to defendants' liability (*see, Zuckerman v City of New York*, 49 NY2d 557, 562), we are constrained to reverse Supreme Court's order, grant the motions and dismiss the complaint. Although some of the underlying facts have not been fully developed, it appears that the original concept for the retractable floor came from Edward Woodruff, a manufacturers' representative. After General Electric expressed its interest in that concept, Woodruff approached Conner, a small custom sheet metal fabricator, with a sketch of his concept. Using Woodruff's sketch, Conner prepared samples, which were examined and approved by General Electric. Because General Electric requested a shop drawing, Bell drew a sketch and hired a draftsman to prepare the drawing and submitted it to General Electric.

At some point subsequent to the fabrication of the steel panels but prior to their installation, General Electric requested that Conner weld flanges onto the panels so that after a panel was fully retracted, it would pull the next panel out, in a telescoping fashion. According to Robert Salerno, General Electric's manager of manufacturing engineering at the time of installation of the Ravensburg lathe, although General Electric did not design the telescoping sections of the retractable floor, it designed the sidewall and foundation that "encapsulat[ed]" the floor and performed the actual installation of the floor. After plaintiff's accident, General Electric discovered that it had built nothing into the foundation to prevent the last telescoping sections from coming all the way out. It made a subsequent modification to remedy that defect.

The record is devoid of competent evidence to support the conclusion that Conner's design (to the extent that it may have performed any design function) or construction of the compo-

---

* Incorrectly sued as VF Connor Inc.

nent parts of the retractable floor contributed to the failure giving rise to plaintiff's injuries. To the contrary, it would appear that the sole contributing causes of plaintiff's injuries were, first, General Electric's failure to properly secure the outermost panels in the foundation opening and, second, prior damage to the retractable floor, which was caused and subsequently repaired by General Electric personnel and had the effect of preventing the separate panels from properly telescoping. Under the circumstances, we perceive no basis for liability against any of the defendants.

In our view, the affidavit of plaintiff's purported expert, licensed architect Irving Paris, failed to raise a genuine question of fact, as it was wholly unencumbered by any recitation of relevant foundational facts or applicable industry standards (*see, Amatulli v Delhi Constr. Corp.*, 77 NY2d 525, 533-534 n 2; *Ramirez v Sears, Roebuck & Co.*, 286 AD2d 428, 430). Significantly, the opinion that Conner "was negligent in failing to incorporate into its plans and specifications * * * any type of safety device or mechanism whereby the * * * retractable floor would be prevented from coming out of the wall cavity and causing a falling hazard to people working in the * * * lathe pit" is wholly conclusory and ignores the undisputed evidence that General Electric was solely responsible for the means of securing the outermost panels into the floor. Similarly, the opinion that Conner failed to utilize an adequate gauge of sheet metal, which caused excessive downward deflection of the floor panels, appears to be based on nothing other than speculation.

Although not necessary for our determination, it is our further view that, as a "casual manufacturer," Conner cannot in any event be held liable to plaintiff under theories of strict products liability or negligent design (*see, Gebo v Black Clawson Co.*, 92 NY2d 387; *Sukljian v Ross & Son Co.*, 69 NY2d 89). The evidence established Conner to be a custom steel and sheet metal fabricator that was by no means in the business of designing and manufacturing retractable steel floor panels. In fact, the retractable floor at issue in this action is the only one ever fabricated by Conner. In our view, plaintiff's effort to avoid the conclusion that Conner was a "casual manufacturer" by portraying it as one "in the business of manufacturing specialty sheet metal products for sale to its customers" actually strengthens Conner's position. As a custom fabricator, Conner creates each of its individual products to meet a particular customer's specific needs. That kind of one-time-only work implicates none of the public policy considerations underlying the imposition of strict liability, which have arisen out of "the

increased complexity of modern products and modern production methods [where] most often only the manufacturer can fairly be said to know and to understand when an article is suitably designed and safely made for its intended purpose" (*Gebo v Black Clawson Co., supra* at 393 [internal quotation marks omitted]).

Cardona, P.J. and Crew III, J., concur.

Lahtinen, J. (concurring in part and dissenting in part). We concur with the majority regarding the dismissal of the complaint against defendant MTR Ravensburg Inc. We respectfully dissent, however, from that portion of the majority decision that grants summary judgment dismissing the complaint against defendants VF Conner Inc. and Gordon Bell. Viewing the evidence in the light most favorable to plaintiff (*see, Dubbs v Stribling & Assoc.*, 96 NY2d 337, 339), we agree with Supreme Court that questions of fact exist regarding the potential liability of Conner and Bell.

The record does not, in our opinion, support the conclusion, as a matter of law, that Conner is a casual manufacturer and, thus, insulated from products liability. A manufacturer whose product causes an injury may be liable if the product contained a manufacturing flaw, was defectively designed or failed to include adequate warnings (*see, Liriano v Hobart Corp.*, 92 NY2d 232, 237; *Codling v Paglia*, 32 NY2d 330, 342). Typical examples of manufacturers subject to products liability are ones that produce substantial quantities of a particular product (*see, e.g., Voss v Black & Decker Mfg. Co.*, 59 NY2d 102 [manufacturer of power saws]; *Codling v Paglia, supra* [manufacturer of motor vehicles]). On the opposite end of the spectrum and beyond the parameters of products liability is a company that modifies a machine to meet the company's specific needs, not for purposes of market sale of the machine, and then later sells the machine after its utility to the company has been exhausted (*see, e.g., Gebo v Black Clawson Co.*, 92 NY2d 387; *Sukljian v Ross & Son Co.*, 69 NY2d 89).

While the facts in the current case do not fit neatly into either end of the products liability spectrum, they contain important elements consistent with finding products liability applicable. Conner's primary business was manufacturing speciality sheet metal products. The subject floor was exactly such a product, a specially manufactured retractable metal floor. The fact that Conner had not previously made other metal floors is not dispositive. Conner held itself out as having expertise in fabricating metal products and, thus, all the metal products it endeavored to produce—including the retractable

metal floor—were required to be suitably designed and safe for the intended purpose (*see, Sukljian v Ross & Son Co., supra* at 95; *Codling v Paglia, supra* at 340).

The fact that General Electric installed the retractable metal floor in the work area where the accident occurred does not foreclose the potential liability of Conner and Bell. Supplying the floor that became a part of the entire work area constructed by General Electric is analogous to supplying a component part for a product assembled by a separate manufacturer. The manufacturer or seller of a component part may be subject to products liability if, among other things, the component part is defective and the defect causes harm (*see,* Restatement [Third] of Torts: Products Liability § 5).

The full role of Conner and Bell in manufacturing and designing the retractable metal floor and whether the floor was defectively designed cannot be resolved based on the record before this Court. Robert Salerno, an employee of General Electric who was familiar with the installation of the retractable metal floor, testified at an examination before trial that General Electric did not do the design work for the floor. He stated that Conner drew designs for the floor which were incorporated by General Electric into its foundation drawing. Salerno further related that, before the accident, there was nothing in the retractable floor's design to prevent the last section of the floor from coming out of the foundation. It was precisely such an alleged defect that purportedly caused plaintiff's accident. Such evidence, we believe, raises factual issues and, thus, summary judgment is not appropriate as to Conner and Bell.

Peters, J., concurs. Ordered that the order is reversed, on the law, with costs, motion granted, summary judgment awarded to defendants and complaint dismissed.