OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 In
 
 Gebo v Black Clawson Co.
 
 (92 NY2d 387, 392 [1998]), we explicitly left “for another day the task of defining the precise outer boundary of casual manufacturer status” that insulates certain sales from strict products liability. In a sense, that day has arrived. Because we conclude that defendant VF Conner, Inc. was not a casual manufacturer of the product at issue, and because issues of fact preclude summary judgment, we reinstate plaintiffs complaint against VF Conner and one of its owners, Gordon Bell (collectively Conner).
 

 Plaintiff was employed as an assembler at the General Electric Turbine Assembly Plant in Schenectady, affixing metal fan blades to large steam turbine shaft rotors suspended on lathes. Most of the lathes at the plant were on the factory floor, and scaffolding would enable workers to reach the upper parts of the rotor. However, one lathe — the MTR Ravensburg lathe— was installed in a pit approximately 10 feet below the factory floor. Assemblers would reach the lower portions of the rotor on that lathe by a stairway into the pit. In order to give them a place to stand when working on the upper portions of the rotor, a retractable floor consisting of large sheet metal panels was built into the walls of the pit. These panels could be extended by two workers standing in the pit, on the bed of the lathe, and reaching overhead to pull out the telescoping panels. When extended, the panels served as the floor of the work space above the pit.
 

 On June 24, 1997, plaintiff was assigned to the MTR Ravens-burg lathe to prepare a turbine shaft rotor for drilling. While
 
 *472
 
 plaintiff and a coworker were in the pit attempting to pull open the retractable floor, the panels came entirely out of their wall enclosure and fell on plaintiff, causing injury.
 

 Plaintiff commenced suit against MTR Ravensburg, the lathe manufacturer, and Conner, the retractable floor fabricator, alleging causes of action for strict products liability, negligence, failure to warn, misrepresentation and breach of warranty. Conner sought summary dismissal of the complaint on the ground that, among other things, it was only a “casual manufacturer” of the floor, and thus not subject to strict products liability. MTR Ravensburg cross-moved for summary dismissal of the complaint on the ground that it in no way caused or contributed to the collapse of the floor.
 

 Supreme Court denied the defendants’ motions for summary judgment, concluding that Conner was not a casual manufacturer and that the record raised triable issues of fact as to the liability of both MTR Ravensburg and Conner. The Appellate Division reversed and dismissed the complaint in its entirety. A divided Court held that the sole cause of plaintiff’s injuries was General Electric’s improper installation and maintenance of the retractable floor, adding that because the floor at issue was the only one manufactured by Conner, Conner was a casual manufacturer and thus immune from claims of strict products liability and negligent design.
 

 Because we conclude that Conner was not a casual manufacturer of the floor, and that there are disputed factual issues regarding its liability, we modify the Appellate Division order and reinstate the complaint against Conner.
 

 We first address Conner’s argument, accepted by the Appellate Division majority, that it was a casual manufacturer of the retractable floor and therefore not subject to strict liability for any possible defect in the floor.
 

 Manufacturers of defective products may be held strictly liable for injury caused by their products — meaning that they may be liable regardless of privity, foreseeability or reasonable care
 
 (see Codling v Paglia,
 
 32 NY2d 330, 342 [1973]; Prosser and Keeton, Torts § 98 [5th ed]). A product may be defective because of a mistake in the manufacturing process, because of defective design or because of inadequate warnings regarding use of the product
 
 (see Voss v Black & Decker Mfg. Co.,
 
 59 NY2d 102, 106-107 [1983]).
 

 Strict products liability rests on several public policy considerations. In light of the increased complexity of modern
 
 *473
 
 products and manufacturing methods, often only the manufacturer “can fairly be said to know and to understand when an article is suitably designed and safely made for its intended purpose”
 
 (Codling,
 
 32 NY2d at 340). Belatedly, the manufacturer alone “has the practical opportunity, as well as considerable incentive, to turn out useful, attractive, but- safe products”
 
 {id.
 
 at 341).
 

 Strict products liability, moreover, appropriately applies to sellers who engage in product sales in the ordinary course of their business because such sellers “may be said to have assumed a special responsibility to the public, which has come to expect them to stand behind their goods”
 
 (Sukljian v Ross & Son Co.,
 
 69 NY2d 89, 95 [1986];
 
 see
 
 Restatement [Second] of Torts § 402A, Comment c). More generally, the burden of accidental injuries caused by defective products is better placed on those who produce and market them, and should be treated as a cost of business against which insurance can be obtained
 
 (see
 
 Restatement [Second] of Torts § 402A, Comment c;
 
 Codling,
 
 32 NY2d at 341).
 

 Those same public policy considerations are inapplicable where sales of the product are not part of the ordinary course of the seller’s business. Thus, “casual” or “occasional” sales are not subject to claims of strict liability
 
 (see Gebo v Black Claw-son Co.,
 
 92 NY2d 387, 393 [1998];
 
 Stiles v Batavia Atomic Horseshoes,
 
 81 NY2d 950, 951 [1993];
 
 Sukljian,
 
 69 NY2d at 95-96;
 
 see also
 
 Annotation,
 
 When is Person “Engaged in the Business” For Purposes of Doctrine of Strict Tort Liability,
 
 99 ALR3d 671).
 

 In
 
 Sukljian,
 
 for example, we concluded that third-party defendant’s sale of a surplus 11-year-old mill on an “as-is” basis was a casual or occasional sale, not subject to a claim of strict products liability, because it was wholly incidental to the seller’s regular business. The “casual or occasional seller of a product does not undertake the special responsibility for public safety assumed by those in the business of regularly supplying those products”
 
 {Sukljian,
 
 69 NY2d at 95). Moreover, as a practical matter, the occasional seller “has neither the opportunity, nor the incentive, nor the protection of the manufacturer or seller who puts that product into the stream of commerce as a normal part of its business, and the public consumer does not have the same expectation when it buys from such a seller”
 
 {id.).
 
 In
 
 Gebo
 
 we applied to manufacturers the
 
 Sukljian
 
 distinction between a casual sale and a market sale in the ordinary course of business, concluding that a defendant who
 
 *474
 
 modified a product for its own use, not for market sale, was a casual manufacturer not subject to strict products liability (92 NY2d at 393).
 

 Here, Conner maintains that it should be free of strict products liability because it only engaged in a one-time, custom fabrication of the retractable floor, and is not a manufacturer of retractable floors. The Appellate Division majority agreed, concluding that the one-time-only work of a custom fabricator “implicates none of the public policy considerations underlying the imposition of strict liability” (294 AD2d 758, 761 [2002]).
 

 We disagree. True, when a custom fabricator builds a product to suit a customer’s specific needs, there may well be less informational disparity between the producer and the user than in the mass production setting. Such disparity is, however, only one of the several policy reasons underpinning strict liability. Like other manufacturers, custom fabricators engaged in the regular course of their business hold themselves out as having expertise in manufacturing their custom products, have the opportunity and incentive to ensure safety in the process of making those products, and are better able to shoulder the costs of injuries caused by defective products than injured consumers or users.
 

 Conner is in the business of manufacturing specialty sheet metal products, and the retractable floor was just such a product — specifically manufactured for market sale to General Electric. The sale here was not incidental to Conner’s normal business, as in
 
 Sukljian.
 
 Nor was the floor produced for Conner’s own use, as in
 
 Gebo.
 
 The fact that Conner had not previously built such a floor should not preclude the application of strict liability. So long as the product was built for market sale in the regular course of the manufacturer’s business, as it was here, strict liability may apply.
 

 Alternatively, Conner argues that summary dismissal of the complaint was appropriate because it had no role in the alleged defective design of the floor.
 
 *
 
 Although not altogether clear on the record before us, there is some evidence that Con
 
 *475
 
 ner may have participated in the design of the retractable floor. The record also indicates that Conner and General Electric may have collaborated on the installation instructions, and that no provision was made in the design for preventing the floor from separating completely from its moorings. Although plaintiffs expert affidavit was too speculative to create an issue of fact
 
 (see Diaz v New York Downtown Hosp.,
 
 99 NY2d 542 [2002]), we conclude that the record otherwise presents disputed issues of fact as to Conner’s involvement in the design and installation of the allegedly defective product. At this juncture, plaintiffs complaint against Conner therefore must be reinstated.
 

 Finally, we agree with the Appellate Division that defendant MTR Ravensburg is entitled to summary dismissal of the complaint. There is no evidence in the record that the lathe itself failed to perform as intended, and MTR Ravensburg was not involved in the design, sale or installation of the retractable floor. Nor can it be said on this record that the retractable floor is a necessary component part of the lathe. Thus, MTR cannot be held liable for any possible defect in the retractable floor.
 

 Accordingly, the order of the Appellate Division should be modified, with costs to plaintiff as against defendants VF Conner, Inc. and Gordon Bell, by reinstating the complaint against those defendants and, as so modified, affirmed, with costs to defendant MTR Ravensburg, Inc. as against plaintiff.
 

 Judges Smith, Ciparick, Wesley, Rosenblatt, Graffeo and Read concur.
 

 Order modified, etc.
 

 *
 

 Where a custom manufacturer simply executes the design specifications of its client, and is not itself involved in the design process, courts apparently are divided as to whether the manufacturer may be strictly liable for a design defect
 
 (compare Moon v Winger Boss Co., Inc.,
 
 205 Neb 292, 299-300, 287 NW2d 430, 434 [1980] [no strict liability]
 
 with, Michalko v Cooke Color & Chem. Corp.,
 
 91 NJ 386, 395, 451 A2d 179, 183 [1982] [strict liability]). That question, however, is not before us here, because there is an issue of fact with respect to Conner’s involvement in the design of the floor.