■ Jason Gray et al., Appellants, v R.L. Best Company et al., Respondents, et al., Defendant. (And a Third-Party Action.) [910 NYS2d 307]—

Cardona, P.J. Appeal from an order of the Supreme Court (O'Connor, J.), entered September 28, 2009 in Ulster County, which, among other things, granted defendants' motions for summary judgment dismissing the complaint.

On April 26, 2005, plaintiff Jason Gray (hereinafter plaintiff) was injured while performing maintenance on an aluminum extrusion press at the factory owned by his employer, third-party defendant, Hydro Aluminum North America, Inc., in the Village of Ellenville, Ulster County. As relevant herein,

aluminum ingots placed in the press are heated until they are malleable, while another part of the press forces the softened aluminum through metal dies to create different shapes. The die slide positions the metal dies that are used to mold the aluminum. The shear blade cuts the aluminum after it is extruded through the dies. A mister is attached to the press for the purpose of spraying lubricant to clean the shear blade following each extrusion of aluminum.

Plaintiff stated at his deposition that, on the day of the accident, he placed a safety alert tag on the press's control panel, informed the press operator that he would be inspecting the mister and walked to the back of the press to begin the inspection. According to plaintiff, he did not "lock out" the electricity flowing to the press because it was not possible to perform the inspection without the press being operational. At some point during his inspection, the press operator at the control panel, who apparently could not see where plaintiff was standing, cycled the die slide at a time when plaintiff was standing in the "pinch zone" between the die slide and the die slide stop. Plaintiff's leg was pinched and, during his subsequent hospitalization, amputated above the knee.

Plaintiff and his wife, derivatively, thereafter sued, among others, defendants R.L. Best Company, Precision Machine Controls, Inc., Amcol Corporation and Loewy Machinery Supplies Company, Inc. under theories of strict products liability, negligence and breach of warranty, based upon those defendants having supplied component parts for the press. Plaintiffs also sued defendant Liberty Electric, Inc. under theories of negligence and breach of warranty for electrical work that Liberty performed on the press.[1] The above defendants separately moved for summary judgment dismissing the complaint and plaintiffs cross-moved for summary judgment on the issue of liability. Supreme Court granted defendants' motions and denied plaintiffs' cross motion, prompting this appeal.[2]

Initially, plaintiffs contend that Supreme Court erred in granting summary judgment in favor of component part manufacturers R.L. Best, Precision and Amcol. Significantly, a claim will sound in products liability if a product placed into the stream of

---

**1.** Although plaintiffs also brought suit against the original designers and manufacturers of the press, those companies are apparently now defunct and did not appear.

**2.** Inasmuch as plaintiffs have not addressed the dismissal of their claims against Loewy in their brief, we deem the appeal against that party to be abandoned (see State Farm Fire & Cas. Co. v Dayco Prods., Inc., 19 AD3d 923, 924 n 2 [2005]).

commerce "contains a manufacturing flaw, is defectively designed or is not accompanied by adequate warnings for [its] use" (*Liriano v Hobart Corp.*, 92 NY2d 232, 237 [1998]; *see Gebo v Black Clawson Co.*, 92 NY2d 387, 392 [1998]). Notably, "where a component part manufacturer produces a product in accordance with the design, plans and specifications of the buyer and such design, plans and specifications do not reveal any inherent danger in either the component part or the assembled unit, the component part manufacturer will be held blameless for an injury to the buyer's employee in a strict products liability action" (*Leahy v Mid-West Conveyor Co.*, 120 AD2d 16, 18 [1986], *lv denied* 69 NY2d 606 [1987]; *see Munger v Heider Mfg. Corp.*, 90 AD2d 645, 646 [1982]). Utilizing that standard, we conclude, upon review of all the arguments, that summary judgment was properly granted to all three component part manufacturers for the reasons that follow.

The record discloses that in 2000 Hydro contracted with R.L. Best to fabricate a replacement die slide for the press based upon the original die slide drawings provided to it by Hydro.[3] Furthermore, R.L. Best asserted that it merely shipped, but did not install, the die slide, and that it did so several years before Hydro determined to purchase the mister and install it next to the die slide path. We agree with Supreme Court's conclusion that R.L. Best's proof that it was a component part manufacturer, with no knowledge of any inherent danger relating to the die slide in the context of the overall operation of the press, met its threshold burden of demonstrating entitlement to summary judgment.

In response, plaintiffs asserted that R.L. Best was liable because it failed to provide any warnings or instructions regarding the need to provide a guard for the exposed moving parts of the die slide. However, plaintiffs' expert witness, Igor Paul, offered only conclusory opinions to support plaintiffs' assertion that the absence of a guard, standing alone, is in itself an inherent danger. Notably, plaintiffs' essential theory of liability was that the danger arose when the slide was installed in the press and that the duty to warn arose from R.L. Best having "extensively test[ed] the die slide and examin[ed] it" on the press. However, the uncontradicted proof in the record is that the slide was tested at R.L. Best's factory prior to it being shipped to Hydro, and that Hydro, not R.L. Best, installed the die slide. Although plaintiffs established that R.L. Best had some general familiarity with the press, they point to nothing to indicate that R.L. Best had any affirmative knowledge of the

---

3. The press was originally manufactured in 1974.

hazard created by the functioning of the die slide in relation to the operation of the press as a whole. Plaintiffs' citation to cases and industry standards directed to the manufacturers or retailers of machines, not their component parts, are inapposite. Accordingly, summary judgment was properly granted in R.L. Best's favor.

Similarly, Precision, which produced the controls used to operate the press, met its initial burden through the affidavit of its vice-president, who averred that Precision contracted with Hydro to furnish controls, which were produced without defect and in compliance with national standards and then shipped to Hydro. He further averred that Precision did not install or maintain the controls or the control station, nor was it consulted concerning the specific use or operation of the press or the location of the control station, which was bolted to the floor. Precision having established its entitlement to summary judgment (*see Leahy v Mid-West Conveyor Co.*, 120 AD2d at 18; *Munger v Heider Mfg. Corp.*, 90 AD2d at 646), the burden shifted to plaintiffs to submit proof sufficient to raise a question of fact.

In that regard, plaintiffs relied on Paul's affidavit, which posed numerous bases for Precision's liability grounded, in part, on Precision's knowledge of a previous accident involving the same press some years earlier. However, plaintiffs have not shown that Precision, as a component part manufacturer, had any duty to advise or warn Hydro or its employees regarding the need for safety features unrelated to the controls or control station, nor have plaintiffs demonstrated any other basis for liability.

Summary judgment was also properly granted to Amcol, the manufacturer of the mister. Plaintiffs' claims against Amcol are based on their contention that Amcol inspected the mister while it was on the press and failed to warn Hydro that it was installed in a potentially dangerous location. In support of its motion seeking dismissal of those claims, Amcol produced evidence that the only Amcol employee to view the mister after its installation by Hydro did so in a maintenance area after the mister had been removed from the press. The conclusory and unsupported suppositions of plaintiffs and their expert in response to that proof are insufficient to defeat summary judgment (*see Small v Keneston*, 57 AD3d 1262, 1263 [2008]; *Sprung v MTR Ravensburg*, 294 AD2d 758, 760 [2002], *mod* 99 NY2d 468 [2003]).

Plaintiffs' claims against Liberty, the contractor retained by Hydro to perform the electrical work necessary to install the control station, were also properly dismissed. In support of its motion for summary judgment, Liberty submitted proof that

the electricians who performed the work did so as directed by Hydro supervisors and according to schematics provided by Hydro, all before installation of the mister. Liberty's supervisor and vice-president both averred that they examined the schematics from an electrical installation standpoint prior to Liberty starting work and saw no potential electrical hazards. They also stated that it was Hydro's employees, not Liberty's, who determined the placement of the control panel station. Liberty's expert witness, Maurice Cueva-Eguiguren, opined that the role of an electrical contractor such as Liberty is confined to electrical installation and wiring according to schematics prepared by, in this case, Hydro's experts, and does not extend to other matters. This proof was sufficient to demonstrate Liberty's entitlement to summary judgment.

In response, plaintiffs have submitted no proof supporting their claims that Liberty was negligent or breached any warranty with regard to the electrical installation work it was hired to perform. Importantly, "[i]n general, a contractor may rely with impunity upon plans and specifications which he [or she] has agreed to follow unless they are so patently defective as to place a contractor of ordinary prudence on notice that the project, if completed according to the plans, is potentially dangerous" (*West v City of Troy*, 231 AD2d 825, 826 [1996]; *see Stevens v Bast Hatfield, Inc.*, 226 AD2d 981, 981 [1996]; *Meseck v General Elec. Co.*, 195 AD2d 798, 799 [1993]). Plaintiffs have not contradicted Liberty's showing that it was entitled to rely upon Hydro's schematics. Furthermore, nothing in Liberty's contract with Hydro imposed upon Liberty a duty to review all possible safety hazards relating to operation of the press. As plaintiffs have failed to raise a material question of fact, their claims against Liberty were properly dismissed.

Plaintiffs' remaining arguments have been examined and found to be either unpreserved or without merit.[4]

Lahtinen, Kavanagh and McCarthy, JJ., concur. Ordered that the order is affirmed, without costs.

---

4. Assuming, arguendo, that Supreme Court erred in allowing a surreply affidavit from Precision, we find such error to be harmless inasmuch as the court also considered plaintiffs' response. Furthermore, inasmuch as the affidavit largely repeats prior submissions, no new evidence was provided (*see Huff v C.K. Sanitary Sys.*, 260 AD2d 892, 896 [1999]).